## Meece, et al. v. Colyer, et al.

(Decided November 9, 1915.)

### Appeal from Pulaski Circuit Court.

1. Deeds—Mental Incapacity—Undue Influence.—In an action to set aside a conveyance on the ground of mental incapacity and undue influence, evidence examined and held to support the judgment of the chancellor sustaining the conveyance.

2. Deeds—Undue Influence—Burden of Proof.—In a conveyance for a valuable consideration and where no relation of trust or confidence existed between the parties, the burden of proof is upon the plaintiff to show undue influence.

VIRGIL P. SMITH for appellants.

WESLEY & BROWN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is an action by Mary B. Meece, a daughter of W. F. Richardson, and by her husband, J. C. Meece, as guardian for the infant children of W. F. Richardson. The purpose of the action was to set aside a conveyance made by Richardson to the appellee on the ground of

mental incapacity, undue influence, and inadequate consideration.

W. F. Richardson conveyed to his nephew, Colyer, the appellee, 32 acres of land, in consideration that Colyer would "care and provide for the said W. F. Richardson as long as he lived, furnish him suitable food and raiment, wait on him during his sickness, properly bury him, and erect a tombstone to his grave suitable and appropriate." The witnesses estimate the value of the land at from $12 to $20 per acre.

Colyer's mother was a sister to Richardson. She owned an undivided interest in the land and joined in the conveyance to her son. Colyer had a little money and some personal property, altogether amounting to not more than $300, and at the time he made the conveyance he executed a will devising all of his personal property to Mrs. Colyer. Whether this was intended as compensation for the release of her interest in the land is not made clear by the record. Anyhow, Colyer at once moved to the place and carried out his part of the contract. Richardson was a widower when he made the conveyance and had been living there alone for many months, afflicted with Bright's disease and dropsy. He lived 68 days after the conveyance. Before making the trade with Colyer, he offered to convey it to his son-in-law, Meece, the appellant, if Meece would move there and take care of him. Meece would not move to the Richardson place, but offered to give Richardson a home with him at the Meece place if Richardson would make the conveyance. Richardson insisted that he wanted to live and die at his own home. Richardson's wife died about a year before the conveyance, but they had been living apart for 14 or 15 years. There is testimony that they were divorced, although upon what ground and at whose instance the record does not disclose. Meece married Richardson's oldest daughter about 4 or 5 years before this controversy arose, and after that time Richardson's wife and infant children lived with Meece. Meece did a good part by them, but the question here is not one of compensation to him out of the Richardson estate. Richardson was sent to the asylum as a lunatic three times and each time kept there from two to four months, but his last release was more than ten years before he made the deed to Colyer. About a month before the deed

another inquest was held in the Pulaski Circuit Court, where he was adjudged to be sane and restored to his property rights. Eighteen witnesses testified that during the last ten years of his life he was of sound mind and capable of transacting business. Five witnesses testified to the contrary; but even if there was no other evidence in the case, and he had never been adjudged a lunatic, the evidence of these five witnesses would not be controlling or convincing. There was no evidence of undue influence. The court upheld the conveyance and dismissed the petition. Under this state of facts we must, of course, accept the finding of the chancellor on the question of mental incapacity.

But appellant contends that the court erred in failing to set aside the deed on the ground of undue influence. Although there is no evidence of undue influence, appellant argues that the burden was upon the grantee to show that the deed was made freely and understandingly. The general rule is that one who charges fraud has the burden of making out his case. But where the conveyance is without consideration, or an inadequate consideration, the burden is upon the grantee to prove that the grantor acted freely and understandingly if there is a relation of trust and confidence between the parties, such as attorney and client, guardian and ward, or parent and child. As illustrating this exception to the general rule, the following cases are in point: Hoeb v. Maschinot, 140 Ky., 330; Shacklett v. Goodall, 151 Ky., 20. But here the facts are not sufficient to raise a presumption of fraud. The mere fact that the parties were of kin does not establish such a confidential relation as will give rise to the presumption of fraud. The fact that Richardson only lived 68 days after the deed does not render the consideration inadequate, although the obligation imposed upon the grantee was perhaps made less onerous. As said in the case of Dunaway v. Dunaway, 32 Ky. L. R., 29:

"The test is, was it fair and reasonable when entered into? The grantor might have lived several years longer than he did, and at the time the deed was made, it seemed likely that he would live for several years. In view of the condition of the grantor's health, because of his physical infirmity, and the probability that he would in time become more and more helpless, and a charge or constant care and attention—the agreement of the grantee to sup-

port him the balance of his life, and to decently inter him, made a sufficient consideration to uphold the deed.''

The evidence makes it clear that the land conveyed was not an excessive payment for the services rendered by Colyer during the 68 days that he waited upon and provided for Richardson.

The judgment is affirmed.