## Fields v. Couch.

(Decided April 20, 1916.)

### Appeal from Perry Circuit Court.

1. Quieting Title—Possession of Plaintiff.—It is essential in the maintenance of a suit to quiet title to real property under section 11 of the Kentucky Statutes that the plaintiff shall allege in his petition that he is the owner of the land and also in possession of it, without which the petition is fatally defective.

2. Estoppel—Grounds of Estoppel—Persons Estopped.—To constitute an estoppel in pais, the party sought to be estopped must know the true facts, and that another should act under the belief of and the appearance of a different state of facts by which action he has altered his position and which he would not have done had he been notified by the former of the true situation. These actions on the part of the person to be estopped may be by words, acts, deeds or silence, when it is his duty to speak. If he fails to do so he will afterwards be estopped to rely upon the facts to the detriment of the one who acted upon the false appearances.

3. Appeal and Error—Finding of Chancellor.—The findings of the chancellor upon the facts will not be disturbed by this court if the testimony is such as to leave the mind in doubt as to the truth of the matter.

WOOTTON & MORGAN, BAILEY P. WOOTTON, JESSE MORGAN and JOHN L. DIXON for appellant.

HOGG & JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS.—Affirming.

On July 1, 1850, there was issued to Esau Fields a patent for one hundred acres of land, it at that time being entirely in Perry county, Kentucky, and described as follows: ''Beginning on a beech at the head of Mc-Intosh's creek; thence north 80 W. 150 poles to a stake; north 40 poles to a stake; south 89 east 146 poles to a stake; south 66 poles to the beginning.'' Many years after this the county of Leslie was formed and the line between it and Perry county passed through this tract of land leaving about twenty acres of it located in Perry county and the remaining eighty acres in Leslie county. This suit was filed on July 10, 1913, in the Perry circuit court by appellant (plaintiff below) against appellee (defendant below) seeking to have the title of the plaintiff to the land covered by the patent quieted, it being alleged in the petition that he was the owner of it and that the defendant was claiming some kind of interest therein and to hold some character of title to it, but it is not alleged in the petition that the plaintiff was in possession of it. A demurrer was filed to the petition which was overruled.

The court was manifestly in error in thus holding, for there is no rule of practice better established in this jurisdiction than the one that in cases of this character the plaintiff must not only allege ownership of the land to which he desires the title quieted, but he must also allege that he is in possession of it. Kentucky Statutes, Sec. 11; Brown v. Ward, 32 Ky. Law Rep. 261; Dupoyster v. Luck, 33 Ky. L. R. 320; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249; Hall v. Pratt, 142 Ky. 561; LeMoyne v. Hays, 145 Ky. 415; Cumberland Co. v. Kelly, 156 Ky. 397.

These allegations of course must be sustained by proof in order to enable the plaintiff to succeed in his suit. The answer consisted of a denial of the allegations of the petition and also an affirmative claim to ownership of the land by the defendant. During the progress of the cause, the defendant abandoned the claim of ownership to any part of that portion of the tract lying in Perry county, but continued to insist upon his ownership to all that portion of it lying in Leslie county.

Upon the submission of the case, judgment was rendered upholding the contention of the defendant as to his ownership of that portion of the land which he claimed

lying in Leslie county and dismissing the petition in so far as it sought to have the title of plaintiff quieted to that portion of the tract, and from that judgment the plaintiff prosecutes this appeal.

Both parties claim title to the land through the same person, one Hiran Lewis, and he is alleged to have obtained the title in the following manner: Patentee, Esau Fields, some time after the issuing of the patent to him executed a title bond by which he attempted to sell the land to his son, Hiran Fields, and he subsequently assigned this title bond to Elhanon Fields, and he in turn assigned it to Hiran Lewis. Each of these assignments according to the testimony was in writing, and by each of them the assignors attempted to convey and transfer the title to the tract of land in controversy. In 1901, Hiran Fields died intestate, domiciled at the time in Perry county. The defendant is his son-in-law and was such at the time of his death; and on the 17th day of February, 1902, he and his wife, filed suit in the Perry circuit court to settle the estate of the decedent and to allot to his widow dower in his real estate and to sell the remainder for the purpose of payment of debts and division among the heirs. At that time Hiran Lewis was supposed to own something between 400 and 500 acres of land located in Perry county. That suit progressed to a judgment and the land was sold under a decree of the court by the master commissioner, at which sale one Mat Lewis, a son of Hiran Lewis, became the purchaser, and a deed was executed to him by the commissioner which was approved and filed in the cause and duly recorded in the Perry county court. In 1907, the appellant purchased from Mat Lewis the land which the latter had purchased at the decretal sale, and it is his contention that the lands which he so purchased, being the same sold under the judgment of the court, included the land in controversy. This is all the title which he attempts to show in support of his claim to the land.

It is the contention of the defendant that a year or two before the death of Hiran Lewis, he assigned the title bond to the tract of land which he had obtained from Elhanon Fields to defendant and that he immediately took charge of it, having paid the consideration, and has had possession of it continuously since then; that Hiran Lewis at his death did not own the land and it was, therefore, not included in the description of

the land sold in the suit to settle his estate to which we have before referred. It will be seen that the only issue in this case is one of fact, it being, whether the land in controversy was included in the description of that which was sold in the suit to settle the estate of Hiran Lewis.

Before considering this, it might be necessary to notice a fact appearing in the record, which is, that a small portion of the 100 acres in controversy, being a part of that lying in Perry county, is cleared, there being, however, no house of any kind built upon it. Just when this land was cleared or who cleared it, is not definitely shown, nor is it shown by whom it has been cultivated since being cleared. It does appear, however, that after the purchase made by the plaintiff from Mat Lewis, he placed his son, Henry Fields, in possession of another tract of land owned by Hiran Lewis at his death and that this son since then has cultivated some or all of this cleared land. The tract of land upon which Henry Lewis moved and upon which he resides is a different one from the 100 acres in controversy. We do not find from the record any evidence of such possession of the cleared land with a claim to the well marked boundaries of the 100 acres covered by the patent so as to ripen a title to all of it by adverse possession. However, if this was so, it would not aid the plaintiff any more than the defendant, as each of them claim through the same person. There evidently has not been any adverse possession by the plaintiff or any tenant or occupant under him of the land so as to perfect the title in him.

One of the contentions made by the plaintiff is that the defendant was cognizant of the purchase which the former made of Mat Lewis in 1907, and stood by without protest and saw the purchase made and the consideration paid, and that he is thereby estopped to assert any claim to the land adverse to the plaintiff. It is sufficient to say, however, that the evidence totally fails to sustain this claim. It is admitted by the defendant that he heard in a general way through rumor in the neighborhood that Mat Lewis was about to sell or had sold the land which he had purchased at the decretal sale to the plaintiff, but knowing that the land in controversy was not owned by Hiran Lewis at the time of his death and had not been included in the land which was sold under that judgment he said nothing about it. There is no evidence to the contrary and it is perfectly plain that these condi-

tions manifest no elements of equitable estoppel. The facts calling for the application of the doctrine of estoppel must be such as that the person sought to be estopped has caused or permitted it to appear that a certain state of facts exists and that another has acted upon the belief of the existence of such state of facts and parted with his property upon the faith of the truth of such appearance. If the one sought to be estopped in such cases has knowledge of the facts, which are different from the appearance, and fails to speak, he will not afterwards be permitted to do so to the detriment of the one acting upon the appearance. In other words, there must be some element of misrepresentation by the one estopped causing the party seeking the benefit of the estoppel to act otherwise than he would have done had it not been for the misrepresentation. This misrepresentation may be by acts or words or even by silence when good conscience and fair dealing would require one to speak and make the facts known.

The doctrine is well stated by this court in Trimble v. King, 131 Ky. page 1, wherein the court quotes from Alexander v. Woodford Springs Lake Fishing Co., 90 Ky. 215, as follows:

"There may be an equitable estoppel such as to prevent the real owner from interfering with an easement created by an entry and an expenditure of money by reason of the owner's silence or consent, where the party entering has no other means of redress. If one stands by and sees another build a house on his land, the latter acting in good faith and believing that it belongs to him, will the real owner be permitted to stand by and see the house erected and then assert his title for the first time? Equity will prevent him from speaking when as a conscientious man he should remain silent." (See also, Foster v. Shreve, 6 Bush 519; Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133; Vol. 11 A. & E. Ency. of Law, page 428.)

The rule is too well settled to require the citation of further authorities.

In this case there is no absolute proof that the defendant knew of the purchase of the land by plaintiff until after the transaction had been completed, and if he had known it, he did not know the land here involved formed any portion of the subject matter of that trade.

We, therefore, find no rule for the application of the doctrine of estoppel *in pais* in this case.

Coming now to the question of fact which we have seen to be the principal question in the case, it is shown by a number of witnesses resident in the community and perfectly familiar with the land which Hiran Lewis owned at his death, as well as that covered by the Esau Fields patent, that the latter is not included in the former. This is testified to by the defendant as well as Mat Fields, the vendor of plaintiff, and a number of other witnesses. This testimony is not refuted except by the plaintiff and in a manner by J. T. Fitzpatrick, a surveyor who prepared and filed a plat, with his testimony. An examination of the plat, as well as his testimony, fails to convince us of the correctness of his opinion, which itself is not positive upon the point. The description of the land in the deed from Mat Lewis to the plaintiff, which is the same as that in the commissioner's deed to the former, does not contain any courses or distances, but only calls for creeks and forks of creeks and ridges of mountains. With the description in this condition, Fitzpatrick, when asked the direct question as to whether the land in controversy is included in it, says: "Yes, sir, I *think* it does." He then proceeds to show from the map his reasons for so thinking, but, as stated, they are not convincing to us.

It must not be overlooked that the commissioner's deed as well as that of Mat Lewis to plaintiff states that the lands therein respectively conveyed lie in Perry county, when, as we have seen, the land which the trial court adjudged to belong to defendant is, and was at the dates of these deeds, in Leslie county.

The rule is well settled in this State that this court will "not disturb the finding of the chancellor upon an issue of fact where the proof is contradictory and the mind is left in doubt." Shelton v. Shelton, 167 Ky. 167; Continental Ins. Co. of N. Y. v. Buchanan, 32 Ky. Law Rep. 1298; Clark v. McDowell's Admr., 33 Ky. Law Rep. 177; Overton v. Perry, Idem. 931; Brackett's Admr. v. Boreing's Admr., 131 Ky. 751.

As we read the record a preponderance of the testimony is to the effect that the land in controversy is not included in plaintiff's deed, and under the rule, *supra*, we must agree with the chancellor upon his findings of fact.

The land involved herein not being included in the judgment in the settlement and division suit, *supra,* defendant is not estopped by such judgment to claim it.

This results in an affirmance of the judgment and it is so ordered.