## Hardaway v. Webb.

(Decided December 6, 1916.)

Appeal from Letcher Circuit Court.

1. Boundaries—Description—Original Plat as Evidence.—The original plat constituting the basis of a patent is competent as evidence to explain a mistake or ambiguity in the description given by the patent of the land granted, or to supply the omission by such description of a course, distance or object necessary to correctly determine and fix its boundary.

2. Boundaries—Description—Mistake in Call Corrected From Original Plat.—A call in a patent will be corrected to correspond with that given on the orginal plat where it appears that without the correction certain well defined corners would be missed and the survey would not close.

3. Boundaries—Evidence—Estoppel.—The fact that defendant eighteen years before the institution of the action, when he himself entertained doubt as to his ownership of the land in controversy, failed to object to the cutting by another of timber thereon, did not affect the true location of its boundary or militate against his right to thereafter claim ownership and maintain adverse possession of the land.

4. Appeal and Error—Review—Estoppel—Question of Fact.—Finding of Court—When Not Disturbed on Appeal.—On a plea of estoppel in an equitable action, there being conflicting evidence as to the statements of defendant relied on to establish the estoppel and the chancellor having refused to sustain the plea, this court will not disturb his finding where after review of the evidence it is in doubt as to the truth of the matter.

5. Quieting Title—Proceedings—Evidence—In an action in equity to quiet title to a disputed boundary, evidence held to establish defendant's title as the superior.

NICKELL & TYNES for appellant.

JNO. C. EVERSOLE and FELIX G. FIELDS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By this action, instituted in the Letcher circuit court, the appellant, H. Hardaway, sought to recover of the appellee, Ben R. Webb, damages for cutting timber from a certain tract of land described in the petition, of which appellant claims to be the owner. Appellant also prayed an injunction restraining appellee from the further cutting of timber from the land.

The lands described in the petition and claimed to be owned by appellant embrace about 400 acres. The

appellee's answer denied appellant's ownership of the timber or the land from which it was cut and alleged title to both in himself; that is, that he owns a tract or tracts of land containing about 200 acres with which appellant's land described in the petition interferes to the extent of 50 or 60 acres, from which interference the timber was cut and that his title to the 200 acres, including the 50 or 60 acres in controversy, is superior to that of appellant. The answer was made a counter-claim against appellant and judgment was asked against him for the value of the timber which, though cut by appellee from the land in controversy, had been removed and appropriated by appellant under an order of delivery. The latter's reply controverted the affirmative allegations of the answer and pleaded an estoppel based upon the following facts: That at the time appellant was negotiating for the purchase of the lands now owned by him and when he was investigating the title thereto, the appellee, upon being asked by appellant's agent whether he owned any part of the land in controversy disavowed all claim of ownership thereto and stood by and saw appellant purchase and pay therefor without objection and without asserting any title thereto. The plea of estoppel was controverted by rejoinder. Upon the issues thus formed the parties took proof. Following the submission of the case the court below, by its judgment, declared appellee to be the owner of the 50 or 60 acres of land in controversy, quieted his title thereto and awarded him $100.00 as the value of the timber taken by appellant from the land under the claim or order of delivery after it had been cut by appellee. Appellant complains of that judgment, hence this appeal.

It appears from the record that appellant claims title to the land in controversy under a 100-acre patent issued to D. I. Vermillion, April 12, 1872, and also under a deed from Alfred Hall to D. I. Vermillion made July 16, 1860. Appellee claims title under a 500-acre patent issued to Ezekiel Brashears and Alfred Hall, April 10, 1849, and a deed from Adam Hall to Simpson Adams, March 15, 1854. Hall had previously been conveyed by Ezekiel Brashears his entire interest in the 500-acre tract of land patented to Ezekiel Brashears and Alfred Hall. The tract of land conveyed by Alfred Hall to Simpson Adams, March 15, 1854, containing 50 or 60 acres, was conveyed September 13, 1869, to appellee by

deed from Simpson Adams. The deed from Alfred Hall to D. I. Vermillion of July 16, 1860, conveyed to the latter all the interest Hall owned in the Brashears and Hall 500-acre patent, except the 50 or 60 acres conveyed Simpson Adams by Alfred Hall, March 15, 1860. The above mentioned title papers, together with the several deeds showing appellant's chain of title back to D. I. Vermillion, were introduced in evidence. As the patent to Ezekiel Brashears and Alfred Hall, the deed from Brashears to Hall and the deed from Hall to Simpson Adams are of older date than the D. I. Vermillion patent or the deed from Alfred Hall to D. I. Vermillion, it necessarily follows that appellee was entitled to recover the land in controversy if the Brashears and Hall patent and the deed from Alfred Hall to Simpson Adams and that from the latter to Ben R. Webb, cover the land in controversy.

An elaborate map or plat, marked "B. R. W. No. 5," showing the respective contentions of the parties as to the location of the lines of the Brashears and Hall patent and other boundaries involved in this case, is here inserted in the opinion. According to the contention of appellee, the boundary of the Brashears and Hall patent is indicated on this map by the black letters A, B, C, D, E, F, G, H, I, and A. As claimed by appellant, the boundary of that patent is indicated by the black letters A, B, and the red letters C, D, E, F, G, H, I, and A. The fifty-acre tract of land conveyed appellee by Simpson Adams and to the latter by Alfred Hall is indicated by the yellow lines on the map. The D. I. Vermillion 100-acre patent of April 12, 1872, is indicated by the blue lines on the map, beginning at black letter B, and running to red letters C, D, E, then to black letters D, C, B.

The only difficulty presented is in locating the second line of the Brashears and Hall patent. If the lines are followed according to the calls of the certificate of survey or those of the patent, the patent does not cover the land in controversy, but if run according to the original plat made of the survey, the patent will cover the land in controversy. The difficulty referred to arises out of a mistake in the call of the second line. The beginning corner at black letter A and the corner at black letter B, are admitted by appellant to be correct; but in running from B to the object called for, a chestnut oak on

the top of a hill, the line calls to run S. 38 E. 122 poles, when in fact it should be S. 83 E. 122 poles. In the original plat it is given as S. 83 E. 122 poles, but in the certificate of survey and the patent it is S. 38 E. 122 poles. The plat, certificate of survey and patent agree as to all the other lines. The question to be determined is, is the alleged mistake thus made in the second line of the patent so evident as to authorize its correction?

The plat of the survey for the Brashears and Hall patent must have been made at the conclusion of the survey and the field notes according to the plat, but in transcribing the field notes in later making out the certificate of survey, the surveyor made the mistake of transposing the figures in the second call by making them 38 instead of 83. Naturally this mistake was carried into the patent which, when issued, was made to conform to the calls contained in the certificate of survey. The error is patent from the following facts: (1) To run the second line on a course S. 38 E. 122 poles, instead of S. 83 E. 122 poles, would not carry it to the chestnut oak called for on top of the hill, the stump of which is still there and was fully identified, but to a point in a flat at red letter C, as shown on the map, where no chestnut oak was or could be found; (2) By making the necessary correction in the second line and running it from black letter B S. 83 E. 122 poles to the chestnut oak on the top of the hill at black letter C, and then in accordance with the further admittedly correct calls of the patent, would make the patent properly close with the last line running from black letter I to black letter A; whereas, to run the second line from black letter B S. 38 E. 122 poles to red letter C and thereafter according to the further calls of the patent as claimed by appellant and shown by the red letters D, E, F, G, H, I, A, it would lack 108 poles of closing.

Quite a number of witnesses besides appellee himself, many of them elderly men, all residents of the neighborhood and well acquainted with the corners and lines of the Brashears and Hall patent, testified to the correctness of the boundary of the patent as claimed by appellee. Some of these witnesses had seen the patent surveyed by Stephen Fields and others by Newt. Lewis; still others by Nehemiah Webb, all of whom established the second line from black letter B to black letter C by following the call in the original plat, S. 83 E. 122 poles,

which invariably carried the line to the object called for, the chestnut oak on top of a hill. Some of these witnesses also saw the line run from black letter D to black letter E which led to the stump of a chestnut oak called for in the patent, certificate of survey and original plat, known as a corner of the Brashears and Hall patent.

The admissibility as evidence of the original survey or plat constituting the basis of a patent, has long been recognized in this jurisdiction as competent, with other evidence on the subject, to explain a mistake or ambiguity in the description given by the patent of the land granted, or to supply the omission by such description of a course, distance or object necessary to correctly determine and fix its boundary. Thus, in Mercer, etc. v. Bate, etc., 4 J. J. Mar. 340, we said:

"The original plat is not only admissible as evidence, but it is intrinsically one of the most potent facts which can be adduced and, hence, it has always been admitted by this court as either preponderative or alone conclusive."

In Bell Co. Land & Coal Co. v. Hendrickson, etc., 24 R. 371, we also said:

"The original plat of the survey may be always used in evidence to show the position of the land, and is evidence of the most potent kind in determining the original location of the lines and corners. (Alexander v. Lively, 5 T. B. Mon. 160; Mercer v. Bate, 4 J. J. Mar. 340.)"

In Hogg v. Lusk, 27 R. 840, it appears that there were several erroneous calls and an omitted line, in the patent relied on by appellant to show his title. In holding that the errors could be corrected and the missing line supplied by resort to the surveyor's plat, we said:

"Appellant admits, and it is obviously true, that if his patent is sought to be established by the courses and distances of its calls it runs wild, and can in no way be so closed as to constitute a valid muniment of title; and if these calls must be adhered to the judgment of the chancellor must be affirmed. But he insists that certain of the calls are evidently clerical errors, which can be corrected by reference to the plat in the surveyor's certificate, and that when so corrected his patent will be established so as to embrace from 80 to 100 acres of the land within the lines of appellee's 800-acre patent. The

calls in the surveyor's certificate are the same as those in the patent, and, therefore, contain the same errors, and if they are to be corrected, this must be done alone by the plat drawn by the surveyor. . . . . It must be presumed that the state, the surveyor and the grantee intended to establish a valid patent, and not to do merely a vain and useless act; and, therefore, we must conclude that the two erroneous calls, and the omitted line, which make the work abortive, should be corrected as shown by the plat, and the patent established. We know that such mistakes are readily made, and easily escape detection when read over. But when we observe the completed figure of the plat, which shows what the surveyor intended to accomplish by his calls, there is no room for mistake; an omitted line is detected by the eye at a glance, and an erroneous direction wholly destroys the figure. By the aid of the plat we have no difficulty in correcting the manifest error made in transcribing the field notes. The principle is, that the intent of the parties must be effectuated, if possible, and the mere mistake of the officer should not be allowed to frustrate this intention if there is evidence by which they may be corrected. This evidence we have in the surveyor's plat, which plainly points out the errors. The patent of appellant, when thus corrected, clearly laps on the Lusk patent, and to the extent of the interference the land is the property of appellant.''

It will be found that the following additional authorities are to the same effect: Bruce v. Taylor, 2 J. J. Mar. 160; Patrick v. Spradlin, 19 R. 1038; Zimmerman v. Brooks and Carter Co. v. Brooks, 118 Ky. 85; Steele's Heirs v. Taylor, 3 A. K. Mar. 225.

Viewed as a whole, the evidence in this case and the application to it of the rule approved by the authorities, *supra,* convincingly sustains the finding of the chancellor, that the Brashears and Hall 500-acre patent embraces the land in controversy.

We are also of opinion that the chancellor's further conclusion, that the deed from Alfred Hall to Simpson Adams and that from Simpson Adams to the appellee, embrace the land in controversy, is also sustained by the weight of the evidence. While it appears from the proof that eighteen or twenty years before the institution of this action and when one W. W. Baker cut and removed a small quantity of timber from the land in

controversy, appellee himself entertained some doubt as to whether it was embraced by the deeds in question, the existence of such doubt could not and did not change the true location of the lines bounding the land conveyed by these deeds; and we learn from his testimony that he has consistently claimed to own the land for more than fifteen years before the institution of appellant's action. His testimony also shows his familiarity with its boundary and that since the cutting of the timber by Baker he has had it surveyed both by Newt. Lewis and Stephen Fields, each of which surveys established the boundary as shown by the yellow lines on the map; and that these lines have been marked or in part marked ever since the date of the deed from Alfred Hall to Simpson Adams. Appellee further testified that he resides about the middle of the boundary of the land conveyed by Alfred Hall to Simpson Adams, and by the latter to him, and has so resided since 1864, and in addition had a tenant upon another part of the land for several years; also that he has had enclosed for a good many years about sixty acres of the land and that his claim of ownership and actual adverse possession of the land has continued and existed, to the extent of its boundary, for more than fifteen years before the institution of appellant's action. This testimony of appellee is substantially corroborated by that of Ira Hall, a son of Alfred Hall, whose acquaintance with the boundary of appellee's land began with its sale and conveyance to Simpson Adams by his father. Appellee's testimony is further corroborated by that of Stephen Fields, an admittedly competent surveyor of Letcher county, by whom the land was once surveyed. His familiarity with its boundary is fully shown by his deposition and that it is correctly represented on the map by the yellow lines. It aso appears from Fields' testimony that the boundary of the land conveyed by Alfred Hall to Simpson Adams and by the latter to appellee, was ascertained and located, not only by his survey of that boundary, but also from surveys he made of adjoining deeds and patents. He gave it as his opinion that the land in controversy is included in the boundary of land conveyed by the deed from Alfred Hall to Simpson Adams and by the deed from Simpson Adams to appellee.

The only question remaining to be decided is, should the appellant's defense of estoppel have been sustained?

As previously remarked, his plea of estoppel was based upon the alleged fact that when he was negotiating for the purchase of the lands described in the petition and before his purchase thereof, appellee, in reply to an inquiry from his agent as to whether he claimed the land in controversy, disavowed any claim to or ownership thereof. The testimony of appellant's agent as to this conversation falls short of showing that his principal was induced by the statement of appellee in question to purchase the land in controversy or that he was misled by such statement to act to his prejudice. The only other evidence offered to support that of the agent as to the alleged statements made by appellee was furnished by the testimony of Baker and one or two of his employes, and which only went to show that some seventeen or eighteen years previous to the institution of this action by appellant, appellee had not objected to the cutting of timber on the land in controversy by Baker. Saying nothing of the remoteness of the transaction mentioned by these witnesses, in view of the doubt of his ownership that appellee admits then existed in his mind, the testimony of Baker and his employes must be regarded as of little value. Even if appellee had then been convinced that he did not own the land, such conviction could not have affected the true location of its boundary or militate against his right to thereafter become convinced that he did in fact then own it, or against his right to consistently claim, as he did, the ownership and maintain actual adverse possession thereof to its well defined boundary for more than fifteen years before the institution of the action.

Appellee's specific contradiction of appellant's agent as to the conversation to which the latter testified, together with other evidence furnished by the record tending to corroborate him, seems to have been sufficient in the estimation of the chancellor to outweigh that of appellant's witnesses and satisfy him of its truth. The evidence as to the question of estoppel was conflicting, but the action was brought in equity and each of the parties having asked that his title to the land in controversy be quieted and all proceedings quia timet being of equitable cognizance, we must follow the rule obtaining in equitable actions in this jurisdiction, which is, that where the evidence is conflicting, some weight will be given to the chancellor's finding, and if on the whole case the mind is

left in doubt as to what the truth is, his judgment will not be disturbed on appeal. Gragg v. Barton's Admx., 161 Ky. 210; Meece v. Collier, 166 Ky. 581; Gambil v. Grigsby, 166 Ky. 716; Landis v. McCreary & Co., 166 Ky. 128; Weddington v. Weddington, 169 Ky. 339; Fields v. Crouch, 169 Ky. 554; Herzogg v. Gipson, 170 Ky. 325.

Under the above rule the finding of the chancellor on the issue of fact raised by the plea of estoppel will not be disturbed; and, as on the other issues involved, the chancellor's conclusions are sustained by the weight of the evidence, the judgment must be and is affirmed.