## Walters v. Bentley et al.

(Decided November 21, 1930.)

W. K. STEELE and J. E. CHILDERS for appellant.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On July 14, 1927, Lafe Walters was the owner of two brick buildings situated on the northwest side of Second street in Pikeville, Ky., and adjoining each other. The lots on which these buildings were situated were almost rectangular in shape and were each approximately 20 feet in width by 120 feet in depth. Each building covered the entire width of the lot on which it was situated, but the buildings were only about 80 feet in length, there being thus left vacant about 40 feet on the back end of each of the lots. On the date mentioned, Lafe Walters conveyed to his brother, the appellant, Dr. E. P. Walters, the southwestern house and lot. On the 11th of October following, Lafe Walters entered into a contract with the appellee W. W. Bentley to sell him the other house and lot, and on the 22d of that month he made Bentley a deed. The pertinent parts of the contract and deed read:

The contract. Lafe Walters and wife "hereby agree to sell and convey to" W. W. Bentley "with covenants of general warranty, free from encumbrance, lien and taxes, that certain house and lot on the west side of Second street, known as the P. H. Owens property, adjoining Second street and between the lots of Barbara Marrs and Mallie Rutroff on the north side and Dr. E. P. Walters on the south side and extending to the back of said lot. There is a building under construction at the rear of the store building which is to be completed by first parties free of additional expense to second party."

The deed. Lafe Walters conveys to Bentley the property thus described: "Beginning on a stake on the back side of sidewalk on the conditional line between this property and Mallie Rutroff; thence running up Second street to the line of the lot owned by E. P. Walters; thence in a westerly course with the dividing line between the E. P. Walters lot and the property herein described to the back of the Walters lot; thence in a northerly direction with the back line of said lots to the line of Barbara E. Marrs, and with her lot to the line of the lot conveyed to Mallie Rutroff, and with the line of said Rutroff lot to the beginning, and is to include the entire lot and building and improvements thereon."

Some time prior to the sale of this property to Bentley, Lafe Walters had leased it for a period of three years to the Blue Ribbon Bakery. When Lafe Walters

leased this property to the bakery, he agreed by the terms of the lease to erect upon the vacant part of the lot behind the brick building a one-story concrete block building, large enough to house two baker's ovens with room for their operation. When Lafe Walters got the measurements of the building required he found that his lot was not wide enough to permit the construction thereon of such an oven building as was needed. According to the appellant, Lafe Walters then arranged with him to put a portion of this concrete block building on the vacant part of the lot which he had theretofore conveyed to the appellant, and, in consideration of this permission on the part of the appellant, Lafe Walters agreed to pay him $4 per month rent for the encroachment. This concrete block building was in course of construction at the time Lafe Walters sold the Blue Ribbon Bakery house and lot to the appellee Bentley and is the building which Lafe Walters agreed in the contract of sale to complete at his expense. This he did. As completed this concrete block building encroached on the back part of the appellant's lot in an L-shaped fashion. Just back of appellant's brick house, the concrete block building juts over onto appellant's lot 3½ feet, but 8 feet back of the brick house it widens out to about 7 feet. The entire depth of the concrete block building where it rests on appellant's lot is about 26 feet. In course of time the appellant sent to the appellee W. W. Bentley a bill for the use of the back part of his lot by the concrete block building on the basis of the $4 per month, which he claims his brother had agreed to pay him. The appellee Bentley refused to pay the bill, and, according to his own testimony, he declined to move the concrete block building, stating that, if it turned out that the concrete block building was over on Dr. Walters' land, the latter would have to look to Lafe Walters to have the building removed at Lafe Walters' expense. Bentley further testified that Lafe Walters declined to stand this expense. Not long after this Lafe Walters died. Later the appellant brought this suit against Bentley praying in the alternative that Bentley be compelled to pay the rent of $4 a month, or that Bentley be compelled to restore to him the possession of that part of his lot upon which the concrete block building rested. By his answer, Bentley traversed the petition, asserted by a counterclaim title to the property in question, and pleaded an estopped against the appellant's assertion of title. Later the appellee Myra Greer Bent-

ley, as trustee of W. W. Bentley, Jr., filed an intervening petition in which she averred that the property in question had been conveyed to her by the appellee W. W. Bentley in trust for her son. She asked that she be made a party defendant. Her intervening petition set up the same defenses and claims as those made by her husband. The defenses and claims of the appellees were put in issue by the appellant, and, after proof was taken, the court dismissed the appellant's petition, and from that judgment this appeal is prosecuted.

Inasmuch as the appellees Myra Greer Bentley and her son stand in the shoes of W. W. Bentley, we will proceed as though W. W. Bentley still owned the lot conveyed to him by Lafe Walters.

It is not denied that the record title to the land in dispute on the back of Dr. E. P. Walters' lot is in the appellant, and it is admitted that the appellees can succeed in this litigation, if at all, only on their defense of an estoppel. To support that defense, Bentley introduced the contract of October 11, 1927, and the deed of October 22, 1927. He also testified that Dr. Walters was present at the time he and Lafe Walters were dickering over the terms of this deal and when he and Lafe Walters signed the contract and took part in the transaction. He makes no claim that Dr. Walters said one word about the concrete block building or its location. Indeed, it is his contention, and he bases his estoppel on the proposition, that Dr. Walters should have spoken up and warned him that the concrete block building encroached or would encroach on Dr. Walters' lot. It is fair to say that Dr. Walters contended that he was not present when this dickering was going on or when the contract was signed, and he is supported in his contention by one other witness. But, taking the appellee's version of the transaction, we are still met with the proposition whether his evidence measures up to the requirements of an estoppel based on silence when there is a duty to speak. It is settled that to constitute an estoppel against an owner of property to claim his title to it when it has been conveyed to a purchaser by a seller who had no title to it where the claimed estoppel is based on the fact that the true owner seeing the seller about to sell the property stood by without warning the purchaser, it must, inter alia, be shown that the true owner knew that his land or interest was the subject of the sale. Thus in Fields v. Couch, 169 Ky. 554, 184 S. W. 894, 896, in disallowing a

claimed estoppel based on silence, where it was asserted there was a duty to speak, we said: "In this case there is no absolute proof that the defendant knew of the purchase of the land by plaintiff until after the transaction had been completed, and if he had known it, he did not know the land here involved formed any portion of the subject-matter of that trade. We therefore find no rule for the application of the doctrine of estoppel in pais in this case."

In Milby v. Akridge, 59 S. W. 18, 22 Ky. Law Rep. 867, we held that: "Where part of a tract of land mortgaged belonged to the son of the mortgagor, the fact that he was present when the mortgage was executed does not estop him from claiming his land as against the purchaser at the foreclosure sale; it appearing that he could neither read nor write, and did not know that his land was included." See also 10 R. C. L. 780; 21 C. J. 1155, et seq.

The reason for the rule is, of course, that, unless the true owner knows his title or interest is the subject-matter of the sale, there is no duty to speak.

It is also settled that the facts giving rise to an estoppel must be established by clear and convincing evidence. Ball v. Riggs, 42 S. W. 97, 19 Ky. Law Rep. 829; Hardaway v. Webb, 172 Ky. 589, 190 S. W. 1071; Saylor v. Kentucky-Cardinal Coal Corp., 205 Ky. 724, 266 S. W. 388. In 50 A. L. R. 666 et seq., may be found an exhaustive note collecting the cases bearing on this proposition.

Upon what evidence does the appellee Bentley rely to show that the appellant knew that his brother was, as Bentley claims, selling Bentley that part of the appellant's lot upon which the concrete block building was to encroach? Only upon what he says took place when he and Lafe Walters were dickering for this property and when, as he says, appellant was present. He admits nothing was said about the concrete building by the appellant and nothing by Lafe Walters beyond that it was in course of construction and would be paid for by him upon its completion. As reduced to writing, the contract did not carry home to the appellant, even if he was present, that any effort was being made to sell any part of his lot to Bentley. It provided that Lafe Walters was selling to Bentley free from any incumbrance or lien that certain house and lot known as the P. H. Owens property which adjoined on the south the property of the appellant.

Clearly there was nothing in this to put appellant on his guard that any part of his lot was being sold. The description of the house referred to the brick house on the lot. The concrete block building was then only in course of erection. It was the lot and the brick house to which reference was made by the clause that the conveyance was to be made free from any lien or incumbrance. The provision that appeared later on in the contract, to the effect that the concrete block building was to be completed at Lafe Walters' expense, was no warning to appellant that the ground upon which it might encroach was the subject-matter of the sale. The lot it was proposed to convey had already been described earlier in the contract and it very clearly did not cover any part of appellant's lot. Nothing was said in the contract about the concrete building other than that it stood in the rear of the store building and was to be completed at Lafe Walters' expense. Appellant knew that he had given his brother permission to erect the block building in part on his land, so that the agreement of his brother to complete at his expense the oven building was of itself no warning that the title to any part of his lot which was not included within the description in the contract was in question. All of the parties were trading for a lot the division line between which and the lot of Dr. Walters was a straight line. This is established very clearly in the evidence, for in the deed made to Bentley some ten or eleven days after the contract was entered into, and of which he makes no complaint, the description of the dividing line between his property and that of appellant is: "Thence in a westerly course with the dividing line between the E. P. Walters lot and the property herein described." This line could not continue in a westerly course if the land upon which the concrete block building encroached was to be included. It would have to have several offsets in it. Further in his own answer, in setting out the property to which he claimed title, Bentley stated that the lot which he bought extended back "between parallel lines to its back." This it just simply cannot do if his lot is to embrace the property in dispute. Further, when first approached about the rent by the appellant, appellee said he would not pay it, and that the concrete block building would have to be moved at Lafe Walters' expense. He made no claim to maintain the block building where it was as a matter of right. All of this evidence leads unerringly at least to this conclusion:

That no one of the parties present at the conference when Lafe Walters sold Bentley the bakery property had any idea or notion that any part of the appellant's lot was involved. It not being brought clearly home to the appellant that it was purposed to sell any part of his lot under the authorities above cited, no duty to speak on his part arose, and Bentley has failed to make out a case of estoppel by silence. It results from what we have said that the judgment of the lower court is erroneous. It is therefore reversed, with instructions to enter a judgment for the appellant in accordance with the prayer of his petition.

Whole court sitting.