## Stewart v. Stewart et al.

Feb. 9, 1945.

Joe Hobson for appellant.

Joe P. Tackett for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

The appellant and appellee left Floyd County, Kentucky, sometime within the year 1916, and went to the States of Texas and Oklahoma, where they remained for four or five months living together as husband and wife. They then traveled to Huntington, West Virginia, where they continued living together as husband and wife, and continued so to live until 1935, at which time they were lawfully married. During this period of cohabitation, both before and after marriage, they had accumulated some property, the real estate being placed in the name of appellee. The appellee claims to have had some $2,000, which she carried with her at the beginning of their escapade. The record discloses that a short while prior to the marriage, the appellant deeded to Lizzie Stewart, his daughter by his first wife, certain property valued at ten or eleven thousand dollars. In 1940, having moved back to Floyd County, Kentucky, the appellant filed suit for divorce in the Floyd Circuit Court alleging cruel and inhuman treatment. He further alleged that during the time they lived together he became possessed of considerable property and that defendant by reason of her position as his wife, and also without right and authority, against his will, took and became possesed of divers properties belonging to him in the amount of at least $10,000. He sets out a certain mortgage executed to the defendant by her mother, Betty Little, in the amount of $284, and a debt of Corie Robie in the sum of $35, being a balance due on furniture belonging to the appellant, which was sold by the appellee. He prays judgment against the defendant, Matilda Stewart, for divorce, and for the sum of $10,000, being the value of the property belonging to appellant which was wrongfully received and converted by her. He prays that the mortgage lien from Betty Little to Matilda Stewart be adjudged to belong to appellant; and that Corie Robie be directed to pay the plaintiff the sum of $35 owed by her for house furniture.

The appellee, defendant below, filed answer, counter-

claim and cross-petition. In her counterclaim she asks for divorce on the grounds of habitual drunkenness, accompanied with the wasting of his estate. She further asks for alimony in the sum of $8,000, and for an attachment against the property of the plaintiff. In her cross-petition against Lizzie Stewart, the daughter of plaintiff by his former wife, she alleges that the conveyance of the property to Lizzie Stewart by the plaintiff was fraudulently made as a result of a fraudulent scheme entered into by the appellant and his daughter to defeat the defendant of her contemplated right of dower. She prays that the plaintiff's petition be dismissed and that she be granted a divorce; that she be restored to her maiden name; for alimony in the sum of $8,000; that she be adjudged the rightful owner of the mortgage which she took from her mother; that the deed from the plaintiff to Lizzie Stewart be cancelled, set aside and held for naught; and that the property be subjected to the payment of defendant's alimony.

Sometime after the filing of the answer by defendant, it appears the parties made some sort of attempt to patch up their affairs and get back together. Pursuant to these efforts, an agreed judgment was entered in the Floyd Circuit Court as follows:

"It is adjudged by the court by agreement of the parties hereto as follows, to-wit:

"First: The plaintiff, H. E. Stewart, is adjudged the owner of and entitled to the full and uninterrupted use and enjoyment of all properties, both real, personal and mixed of every kind or nature, the title to which he has at the date of this judgment, and the defendant, Matilda Stewart is hereby perpetually enjoined from making any claim to any part or portion of the same or from molesting him in any manner in his sole ownership and full enjoyment thereof.

"Second: The defendant, Matilda Stewart, is adjudged the owner of and entitled to the full and uninterrupted use and enjoyment of all properties, both real, personal and mixed of every kind or nature, the title to which she has at the date of this judgment, and the plaintiff, H. E. Stewart, is hereby perpetually enjoined from making any claim to any part or portion of the same or from molesting her in any manner in her sole ownership and full enjoyment thereof.

"Third: The plaintiff, H. E. Stewart, and the defendant, Matilda Stewart, are each adjudged, by their mutual consent and agreement, the full and free right to convey any and all properties which they or either of them has, or may hereafter obtain, without the other joining in such conveyance, same when made being hereby approved and confirmed the same as if joined in by the spouse of the grantor.

"Fourth: The plaintiff's petition in so far as it affects the mortgage held by the defendant, Matilda Stewart, against the estate of her late mother, Bettie Little, and his cause therein claimed against the defendants, Matilda Stewart, Oliver Little, Dennis Little, Marshall Little, Elbert Little, Mary Anderson, Lula Bates, Essie Schrader, Lona Green and Corie Robie, is hereby dismissed settled and he shall take nothing thereby from either of said defendants.

"Fifth: All other questions are hereby reserved for future adjudication and this cause is now continued upon the docket.

"In witness whereof the parties have hereunto signed their names this the 26th day of April, 1941.

                    "H. E. Stewart
                      "Plaintiff

                "Matilda Stewart
                  "Defendant"

"Witnesses:

  "Dennis Gallihue
  "Cora Robie"

Thereafter, it appears that the parties lived together through a period of about two years, after which time the appellant filed an amended petition in this action, in which he stated that the defendant made proposals to him that they settle their differences and stay out of court, and that if plaintiff would come back to her she would alter her conduct and practices and be loyal, faithful and true to him. He alleged that on the 26th day of April, 1941, the defendant wrongfully, unlawfully and fraudulently signed, or caused plaintiff's name to be signed without his knowledge, consent or approval, to a purported agreed judgment (the judgment above set out). He alleged that he did not sign that judgment or agreement, or authorize any person to

sign his name thereto; that his signature thereon is a forgery; and that the judgment should be cancelled, set aside and held for naught. Upon trial of the cause, the court found that the plaintiff had failed to meet the burden of proof as to his cause for divorce, and as to grounds for setting aside the agreed judgment as sought in amended petition. The plaintiff's petition and amended petition were dismissed. A divorce was granted the defendant on her counterclaim. The court further adjudged that neither plaintiff nor defendant recover any money or property from the other, except that the defendant recover of the plaintiff all her costs expended, including an attorney fee of $250. From this judgment the plaintiff appeals.

The appellant insists that the court erred in refusing to set aside the purported agreed judgment on the grounds that the instrument was a forgery; that the court should have rendered judgment against appellee for not less than $6,000, which represents the value of the property appellant gave her; that, since the appellee was to blame for the separation, no attorney fee should be assessed against appellant, or even if one should be assessed, it should not exceed $50; and that the court erred in not discharging the order of attachment.

Supporting his contention that the purported agreed judgment should have been set aside as a forgery, the appellant relies on a number of cited cases, and advances the argument that since the instrument was attacked as a forgery, the defendant had the burden of proving and establishing the genuineness of the judgment. He, apparently, takes the position that because he had attempted to or did introduce letters from the subscribing witnesses to the agreement, in which they state they did not witness the signing of any instrument for the appellant, that it was the duty of appellee to produce these witnesses for the purpose of establishing the genuineness of the agreed judgment. Fraud or forgery cannot be presumed. That the burden of proof rests upon the person alleging fraud, is a rule so fundamental and prevailingly universal, it is unnecessary further to discuss the matter. See Goff v. Moore, 217 Ky. 815, 290 S. W. 659; Meece v. Colyer, 166 Ky. 581, 179 S. W. 579; Adkins v. Stewart, 159 Ky. 218, 166 S. W. 984. The cases cited by appellant deal mostly with the matter of resultant presumptions upon failure to produce wit-

nesses, but are more in support of the appellee's position than that of the appellant's. The record discloses that pursuant to the provisions of the agreed judgment, the appellant carried out the provisions of Article 4 of that judgment. It discloses further that for a period of almost two years after the judgment was signed, the contestants re-established their home and continued living together. A comparison of the signature of the appellant as affixed to the agreed judgment with those appearing on other exhibits herein results in a compelling conclusion that they are the signatures of one and the same person. On the whole, the evidence is not of sufficient weight and dignity to support the grounds for cancellation of the agreed judgment. The court properly so found.

In view of the fact that prior to the marriage, the appellant had deeded certain property to his daughter, which conveyance was attacked by the appellee and in view of the long and somewhat checkered career of the parties, commencing at the time they abandoned their respective families and traveled toward the Southwest, and concluding with this litigation, it appears to us that the court properly adjudged that neither appellant nor appellee should recover any money or property from the other except the attorney fees and costs.

The contention of appellant relative to the attorney's fee is no more plausible than the above. KRS 453.120 provides:

"In actions for alimony and divorce, the husband shall pay the costs of each party, unless it appears in the action that the wife is in fault and has ample estate to pay the costs."

The court granted the divorce to the wife on her counterclaim.

"Putting a little epicac, crotin oil and other similar medicines" in the liquor of the appellant in order to sicken him and turn him against the taste of liquor, and other methods used for breaking protracted drunks, will not burden her with a contribution to, or blame for, the separation. In view of the above, we cannot seriously entertain this contention of the appellant.

The appellant further contends that the court erred in not discharging the order of attachment, claiming

that the order was void because no grounds for attachment were set up. In order properly to reach a justifiable conclusion on this question, it is necessary to observe the pleadings and affidavit of the appellee in the light of that section of our statutes providing for the obtainment of an order securing alimony and maintenance. KRS 403.080 reads as follows:

"When the husband is about to remove himself, or his property or a material part of it out of the state, or where there is reason to suspect that he will fraudulently sell, convey or conceal his property, the wife may obtain the necessary orders for securing alimony for herself and maintenance for their children without giving surety."

That portion of the verified answer, counterclaim and cross-petition setting out the ground of attachment, reads as follows:

"Defendant says that the plaintiff has been threatening to, and actually making efforts to sell and dispose of said restaurant equipment and fixtures, and unless prevented by an order of this Court, he will sell and dispose of this property belonging to this defendant, and will waste and make disposition of the proceeds thereof, and this defendant will have no adequate remedy of recovering and making restitution of her lost property; that she should be adjudged the owner of said property and the plaintiff should be enjoined and restrained from selling or disposing of the same, or from interfering with her in her full and peaceful enjoyment of her said property.

"The defendant says that because of the sale and disposition of his real estate, as is hereinafter set out in paragraph No. 3 hereof, the plaintiff does not own real estate, or sufficient properties subject to execution to satisfy the defendant's claim for alimony herein, and that until the final adjudication of the rights of the parties hereto this defendant is entitled to a general order of attachment against the plaintiff herein, and that he by said injunction and restraining order and attachment be prevented from selling or disposing of the restaurant property belonging to this defendant, or of any properties which he may own." The paragraph 3, of answer referred to in the above statement of grounds, is the cross-petition against Lizzie Stewart, the daughter of H. E. Stewart, in which the appellee alleges that the

plaintiff, appellant herein, and his daughter entered into a fraudulent scheme of conspiracy and collusion to defeat the defendant of her contemplated right of dower, and in the furtherance of said scheme, the plaintiff had executed a deed of conveyance to his daughter, Lizzie Stewart. We are of the opinion that this verified pleading amply meets the requirements of the statutory provision above.

On the case as a whole, we find no error on the part of the court below.

Judgment affirmed.