BYERLY MOTORS, INC. et al., Appellants,

v.

PHILLIPS PETROLEUM COMPANY, Appellee.

Court of Appeals of Kentucky.

May 19, 1961.

Mapother, Morgan & Stansbury, Louisville, for appellants.

Richard C. Oldham, Wm. S. Kammerer, Louisville, for appellee.

STANLEY, Commissioner.

This action was filed July 18, 1952, by Phillips Petroleum Company against Byerly Motors, Inc., Mary Alice Byerly and her husband, Clifford F. Byerly, to recover possession of part of a city lot and damages for trespass and lost profits. The case followed a leisurely course due, in part, to the death of some of the attorneys. It was finally resolved into the question of the rights of the parties to premises covered by overlapping leases. A judgment for the plaintiff is appealed by the defendants.

In April, 1938, F. C. Garvey, the owner, leased to Phillips a triangular lot at the intersection of Taylor Boulevard and Queen Avenue in Louisville. It was described as being on the northeast corner and as Lot No. 1 in Block No. 1 on a recorded plat. The lessor agreed to erect, and did erect, a motor vehicle service station to be operated by Phillips. The lessee had the option of renewals of the lease for a maximum term of twenty-five years.

In January, 1947, Garvey leased to Byerly Motors the adjacent lot "known as 3289 Taylor Boulevard and fronting on Taylor Boulevard approximately 62 feet and extending back eastwardly to Queen Avenue approximately 150 feet." It appears that the north part of the Phillips service station lot had not been graded or cleared for or by Phillips, and 32 of the 62 feet frontage leased to Byerly was of that much of the Phillips lot.

In December, 1948, Mrs. Byerly, wife of the president of Byerly Motors, Inc., Clifford F. Byerly, purchased both of the above lots from Garvey. The warranty in her deed recited that it was subject to the Phillips lease. Garvey assigned his rights under the lease to Mrs. Byerly.

On January 1, 1950, Mrs. Byerly executed a lease to Byerly Motors, Inc., of the lot it had under lease from Garvey, the description being the same, that is, of 62 feet frontage. On April 13, 1950, Mrs. Byerly and her husband executed a renewal lease to Phillips for a term of ten years. The description is the same as that in the Garvey lease. The instrument recites that it "cancels and supersedes" the Garvey lease.

It is conceded that according to the recorded plat (referred to in all of the leases) the Phillips lot (No. 1) has a frontage of 134.6 feet and the Byerly lot (No. 2) has a thirty foot frontage. Hence, there was a duplication of 32 feet in the leases to Byerly and to Phillips.

The defendants in this action sought to have the Phillips lease reformed on the ground of mutual mistake or mistake on the part of the Byerlys and reckless action or bad faith on the part of Phillips. They also pleaded certain facts as creating the estoppel of Phillips from claiming a right to the 32 foot overlap.

Byerly Motors had occupied the 32 foot overlap as part of its used-car lot. It had erected a large billboard on the front of it and done some paving. There is some evidence that Phillips had also used a small corner of the front of the lot for entrance and exit to its service station.

A very large record was built up on the several issues. Upon careful analysis of the evidence the trial court found as a fact that Phillips and its agents knew the dimensions of the lot it had been holding under lease from Mrs. Byerly's predecessor and from her merely "as figures" and descriptions on the plats, but that Phillips was not actually informed of the location "of the invisible, unmarked line" between the two lots until a survey and plat of it were made in May, 1951. The suit, it will be observed, was filed about a year afterward. Upon this finding the court held not sustainable the defendants' claims of estoppel and of a right to reform the lease to Phillips. It was thereupon ordered that Phillips be given possession of the portion of its leased lot occupied by Byerly Motors on April 1, 1956. The matter of accounting and damages for detention and trespass was referred to a commissioner for hearing and recommendation.

Eventually, the commissioner filed an elaborate report tracing the chain of leases of the property and analyzing the evidence as to damages. His computations were intricate in respect to the loss of profits of Phillips' sublessee as evidencing the value of the use or right of occupancy of the 32 feet of which Phillips had been deprived by the Byerlys. In ruling upon exceptions to the commissioner's report, the court confirmed his previous finding as to the right of Phillips to recover the property. The court's opinion shows that the commissioner's report and findings were fully considered. The basis of the recommendation of an award of damages of $3,-262 was held to be of a speculative nature, but the court found that Phillips was entitled to recover the reasonable rental value of the 32 foot portion of its leased lot for a period of 88 months at the rate of $50 a month, which aggregated $4,400. But as the plaintiff had moved confirmation of the commissioner's report of an award of $3,-362, the court held that judgment should go for that sum without approving the theory upon which it was computed.

The denial of the defendants' claims was rested upon the finding that there was no evidence upon which to base a judgment of estoppel against Phillips and insufficient evidence to authorize a reformation of Phillips' lease.

The appellants vigorously argue that the evidence proves there was a mutual mistake and no meeting of the minds of the contracting parties with respect to the leasing of the 32 foot overlap to Phillips, and that Phillips' agents had notice and knowledge of the facts so that it was estopped to claim a right to the property and compensation for its past use by Byerly Motors.

■ We accept the underlying postulate that a deed or lease may be reformed so as to exclude land described therein on the grounds relied upon. But this is on the condition that there shall be a high degree of quality of proof thereof, which is defined by various expressions, such as "clear and convincing." Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S.W. 546, 547.

■ The appellants point to much evidence substantiating their claim of a case for reformation. But there was countervailing evidence of circumstances as well as verbal testimony. The court considers "the character of the testimony, the co-

herency of the entire case, and the docu-ments, circumstances, and facts which are proven." Scott v. Spurr, 169 Ky. 575, 184 S.W. 866, 867.

■■ The foregoing statements are also applicable to the consideration of the evidence as to estoppel of the plaintiff. Here, too, the burden of proving all the facts which constitute the essential ingredients of an equitable estoppel rests upon the party who asserts it, and the decision of that question rests largely on the facts and circumstances of the particular case. Walters v. Bentley, 236 Ky. 136, 32 S.W.2d 747.

■ The opinion of the trial court evinces full consideration of all the evidence and the reasonableness of the deductions therefrom. We are controlled by the provision of CR 52.01 that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." The rule does not require this court to accept findings which are unsupported by the evidence, but it does place upon a party seeking to have such findings vacated the burden to show that they are clearly erroneous conclusions from all the evidence; that is to say, that the findings are not supported by substantial evidence. Clay, CR 52.01, Comment 6, Notes p. 468; Ohlinger's Federal Practice, Vol. 3A, Rule 52, Notes pp. 209 et seq.; Moore's Federal Practice, Vol. 5, Rule 5203, Notes pp. 2609 et seq.

■ We regard the findings of fact both with respect to the right of reformation of the lease and estoppel to be sustained by substantial evidence.

We cannot accept the appellants' argument that if the judgment on the primary issues should be regarded as proper, the award should have been only of nominal damages because there was no evidence upon which the court could have based the judgment of $3,362. With respect to this the court said:

"Although no proof was adduced specifically directed to the rental value of the disputed strip, it is in evidence that Mrs. Byerly paid $25,000 for Lots 1 and 2 (the latter being unimproved, 30 feet frontage) in 1949. The disputed strip is unquestionably useful to the filling station, and essential to the continuance of the Byerly lot at that location. Although proof of a high rental value could probably have been introduced and believed, I believe that the facts in the record would support a (minimum) award of $50 per month (compensatory, not punitive) for its detention. Although Phillips was entitled to it from the beginning of its lease, April 1, 1950, Phillips was not aware until June, 1951, that Byerly was detaining it. Such award for $50 per month, June 1951–October 1958, 88 months, would total $4,400."

■ The term "rental value" might be called "use value," for the recovery was essentially for deprivation of the use and enjoyment of the premises. 15 Am. Jur., Damages, § 131. Cf. Adams Const. Co. v. Bentley, Ky., 335 S.W.2d 912. The amount of damages may be determined on probable and inferential proof as well as on direct and positive evidence of the reasonable value. The evidence in this large record furnished a basis for the reasonable approximation by the court of the rental value of the premises. Where there is certainty of the right of recovery but uncertainty of the amount, appellate courts view liberally its determination by the trial court. 25 C.J.S. Damages § 162, p. 815.

The judgment is affirmed.