STONE-ORDEAN-WELLS COMPANY v. C. H. TAYLOR.[1]

March 22, 1918.

No. 20,760.

**Principal and surety — surety's right on a continuing guaranty.**

1. A surety on a continuing guaranty has a right to stand on the precise terms of his contract. He can be held to no other or different contract.

**Same — discharge of one surety a release of the others, as to future liability.**

2. The discharge of one of the cosureties on a continuing guaranty, affects the contract as to all, and amounts to a release of the other cosureties for liabilities subsequently incurred.

Action in the district court for St. Louis county to recover $2,517.76 upon a letter of credit. The answer alleged that on or about June 21, 1907, defendant and F. B. Myers entered into a written agreement with plaintiff wherein they jointly agreed to guarantee the payment of the account of the Aurora Mercantile Company; that thereafter Myers and plaintiff without knowledge or consent of defendant entered into

[1]Reported in 166 N. W. 1069.

in agreement whereby said F. B. Myers was released from the guarantee. The case was tried before Fesler, J., who made findings and as conclusion of law ordered judgment in favor of plaintiff for $1,935.18. From an order denying its motion to amend the conclusions of law or for a new trial, defendant appealed. Reversed.

*Oliver S. Andresen* and *Fryberger, Fulton & Spear,* for appellant.

*Courtney & Courtney,* for respondent.

QUINN, J.

Plaintiff is a corporation engaged in the wholesale mercantile business at Duluth in this state. The Aurora Mercantile Company is also a corporation engaged in the retail mercantile business at Aurora, about 100 miles distant from Duluth. In June, 1907, the Aurora Company was indebted to the plaintiff for merchandise in the sum of $6,097.18. The defendant, C. H. Taylor, and one F. B. Myers, both stockholders and officers in the Aurora Company, signed and delivered to plaintiff, who accepted the same, a letter of credit, a copy of which is as follows:

June 21st, 1907.

Stone-Ordean-Wells Co.,

Duluth, Minnesota.

Gentlemen:

In consideration of the sum of one ($1.00) to me in hand paid, receipt whereof is hereby acknowledged, and the further extension of credit granted by Stone-Ordean-Wells Co. to Aurora Mercantile Co.; I hereby unconditionally guarantee payment of whatever amount said Aurora Mercantile Co. shall at any time be owing to said Stone-Ordean-Wells Co., on account of goods heretofore or hereafter sold, whether said indebtedness is in the form of notes, bills or open account. This shall be an open and continuing guaranty and shall continue in force notwithstanding any change in the form of such indebtedness, or renewals or extensions granted by you, without obtaining my consent thereto, and until expressly revoked by written notice from me to you, and any such revocation shall not in any manner affect my liability as to any indebtedness contracted prior thereto.

Notice of indebtedness and of default in payment are hereby waived.

Liability under this guaranty shall at no one time exceed the sum of $6,097.53.

Witness:                                    C. H. Taylor,
                                            F. B. Myers.

The above guaranty was executed by Taylor and Myers, and accepted by plaintiff at its place of business in Duluth. Myers was a banker residing at Biwabik. Taylor lived at Duluth and was engaged in the book and stationery business. Neither had active charge of the affairs of the Aurora Company. Myers disposed of his interest in the Aurora Company, and on February 8, 1908, wrote the plaintiff as follows:[1]

Gentlemen:

Some time ago, with Mr. C. H. Taylor, I signed a personal guarantee, guaranteeing the accounts of the Virginia Store Company, the Aurora Mercantile Company, and also, I think, the R. J. McGhee Company. At this time I wish to rescind the guarantee on my part.

Hereafter, from this date you are notified that I will not be responsible for any accounts that they may assume, as per my guarantee.

Kindly acknowledge receipt of this favor, and oblige,

                                            Yours truly,
                                            F. B. Myers.

To which the plaintiff replied:[2]

Dear Sir:

We beg to acknowledge receipt of your favor of the 16th instant, notifying us of your intention to countermand the guarantee of the account of the Virginia Store Company and the Aurora Mercantile Company. Of course you understand that your guarantee holds on all accounts contracted up to this date.

                                            Very truly yours,
                                            Stone-Ordean-Wells Co.
                                            W. L. Mackay.

After receiving the above letter from Myers, plaintiff continued to sell goods to the Aurora Company, and payments were made thereon from time to time, until on September 23, 1911, there was a balance of $2,560.75 owing the plaintiff for goods sold subsequent to February 8, 1908, at which time the company was adjudged a bankrupt. There-

[1] [Exhibit 1.]                            [2] [Exhibit 2.]

after payments by way of dividends were made so that on March 4, 1913, the date of the order for judgment herein, there was owing plaintiff a balance of $1,935.18. The defendant had no notice or knowledge of the writing of Exhibits 1 and 2, or of any attempt on the part of Myers to withdraw from the guaranty, until after the indebtedness sued upon was incurred.

This is an action to recover upon the letter of credit above set forth, against Taylor alone. The trial court made findings of fact and ordered judgment for the full amount of the debt. From an order denying his motion for a new trial, defendant appealed.

There is no controversy over the facts. The case presents simply a question of law. Does the release of one surety operate to release his cosurety where the contract is a continuing guaranty, with the one surety released, before the debt sought to be recovered was incurred, without the knowledge or consent of the other surety?

On June 21, 1907, Taylor and Myers signed the instrument under consideration as sureties. At the time they were stockholders and officers in the Aurora Mercantile Company, jointly interested in its financial welfare. The company was indebted to the plaintiff in excess of $6,000. They were desirous of procuring more time in which to pay this amount, and of obtaining a further line of credit for the company. Myers prepared the letter of credit at plaintiff's place of business, where it was executed by the sureties and accepted by the plaintiff. Subsequently Myers disposed of his interest in the Aurora Company, and on February 8, 1908, served upon plaintiff a notice withdrawing from the guaranty. Plaintiff thereafter continued to furnish goods to the Aurora Company without informing the defendant of the notice served upon it by Myers until September, 1911. Under such a showing it cannot be said that either of the parties to the instrument intended that the other might revoke the guaranty as to himself, without notice to his cosurety, and thereby leave his associate liable for the full amount of the obligation.

"Persons are cosureties, so as to give the right of contribution, when they are bound for the performance by the same principal of the same duty; and whether they became so at the same time or at different times, * * * does not affect the relation nor the right. The right does

not seem to rest upon contract, * * * but upon this natural principle of equity, that where the same burden is assumed equally by several, and one of them is compelled to discharge it, the others ought to contribute each his share, so as to preserve equality." Young v. Shunk, 30 Minn. 503, 16 N. W. 402.

A surety has a right to stand on the precise terms of his contract. He can be held to no other or different one. In the case at bar both contracted together and with reference to the same responsibility. Each had recourse to the other for contribution in case of loss. The release of one affected the contract as to the other. This case is not taken out of the general rule by the fact that the defendant entered into the agreement with knowledge that his cosurety might revoke the contract of guaranty at any time by written notice. The authorities which sustain these principles are numerous. 3 Dunnell, Minn. Dig. § 9097; Brandt, Suretyship, § 441; People v. Buster, 11 Cal. 215; Sage v. Strong, 40 Wis. 575.

·If the rule were otherwise, a surety might be subjected to risks never contemplated, for if a number should sign a guaranty and all but one should secretly withdraw, and no notice were necessary, the remaining surety might be held for the entire obligation. People v. Buster, supra.

We are of the opinion that the defendant was released from the guaranty by the withdrawal of his cosurety, for liability incurred subsequent to such withdrawal.

Reversed.