**UNITED STATES GYPSUM COMPANY,
Appellant,**

**v.**

**Earl SAMPSON, Appellee.**

**No. 8375.**

Court of Civil Appeals of Texas,
Amarillo.

June 11, 1973.

Stone, Stone & Chambers, John C. Chambers, Amarillo, for appellant.

Culton, Morgan, Britain & White, Donald E. Jackson, Amarillo, for appellee.

ELLIS, Chief Justice.

This is an appeal from a take nothing judgment rendered against a plaintiff seeking recovery against a defendant, one of three co-guarantors under a letter of guaranty, when the plaintiff had released another of the co-guarantors from all obligations under the guaranty agreement without advising the defendant-guarantor of such release until after the indebtedness giving rise to this litigation was incurred. Affirmed.

United States Gypsum Company, plaintiff-appellant, instituted suit against Earl Sampson, defendant-appellee, one of three parties who had executed a letter of guaranty to the plaintiff, seeking to recover certain losses accruing by reason of indebtedness incurred by Big A Supply, Inc. The case was submitted to the trial court upon an agreed statement of facts.

On May 5, 1964, the defendant-appellee, Earl Sampson, Jerry D. Caldwell and J. E. Smiley, Jr., executed a letter of guaranty addressed to United States Gypsum Company concerning indebtedness incurred or to be incurred by Big A Supply, Inc. Each of the three parties signatory to the letter of guaranty were either officers, directors or shareholders of Big A Supply, Inc., the debtor corporation.

We note that throughout the entire letter of guaranty language referable to "the undersigned" is employed in the singular, without any portion thereof containing the frequently used qualification of "I, we, or either of us," as the instrument sets out the various provisions relating to the guarantee to pay United States Gypsum Company the indebtedness which Big A Supply, Inc., has heretofore incurred and does hereafter incur for the purchase of merchandise. It contains no express provision pertaining to any circumstances or contingencies that would bring about joint and several liability or proration of liability among the co-guarantors. The instrument is signed by "Earl Sampson," "Jerry D. Caldwell" and "J. E. Smiley, Jr." on the lines under the single heading designated "Guarantor."

On June 19, 1967, Jerry D. Caldwell requested by letter to United States Gypsum Company that he be released from any personal liability in connection with the guar-

anty agreement. Caldwell had previously sold his stock in Big A Supply, Inc. to J. E. Smiley, Jr., and had resigned as secretary and treasurer of the company. On July 6, 1967, United States Gypsum Company released Caldwell from all liability under the guaranty agreement. At the time United States Gypsum released Caldwell from such liability, there was no money owing to United States Gypsum by Big A Supply, Inc. All accounts in controversy in the suit were made for purchases made by Big A Supply, Inc., subsequent to the date Caldwell was released from liability and subsequent to his being a stockholder or officer in such debtor corporation.

Sampson, the defendant, was not advised by Caldwell of his letter requesting the release from United States Gypsum. Further, Sampson was not advised by either Caldwell or United States Gypsum that United States Gypsum had released Caldwell until after the debt giving rise to this suit had been incurred by Big A Supply, Inc. Beginning on September 13, 1967, and continuing through February 27, 1968, United States Gypsum from time to time sold merchandise to Big A until there had aggregated an indebtedness of $6,073.89.

On February 29, 1968, Big A Supply, Inc., executed an assignment for benefit of creditors to J. R. Hollingsworth. On August 29, 1968, United States Gypsum executed an affidavit of acceptance in which it agreed to release Big A Supply, Inc., and all parties privy thereto from further liability upon the account in question. At the time of making the assignment for benefit of creditors, Big A Supply, Inc., was insolvent and has remained insolvent at all times thereafter.

On September 11, 1968, a check in the amount of $1,032.56 was drawn and forwarded by J. R. Hollingsworth, assignee, to United States Gypsum Company, which check represented United States Gypsum Company's pro rata share of the assets of Big A Supply, Inc. According to the agreed statement of facts, the check contained the notation that "it was submitted in full and final payment of all claims and debts owing UNITED STATES GYPSUM COMPANY by BIG A SUPPLY, INC. and the said check was received, accepted and negotiated by UNITED STATES GYPSUM COMPANY with full understanding that the funds represented thereby were so intended to be in final settlement of all claims of UNITED STATES GYPSUM COMPANY against BIG A SUPPLY, INC."

On January 2, 1973, the trial court entered its judgment that United States Gypsum Company recover nothing against Earl Sampson, and all costs were taxed against the plaintiff. From this judgment, United States Gypsum Company has brought this appeal. Pursuant to plaintiff's request the trial court made its findings of fact and conclusions of law. The findings of fact consist substantially of the agreed statement of facts as above set out. In its conclusions of law, the court found that the obligation of Earl Sampson, defendant, Jerry D. Caldwell and J. E. Smiley, Jr., was a joint obligation and not joint and several; that the release by United States Gypsum of Caldwell had the effect of releasing all of the joint obligors under the guaranty agreement of May 5, 1964; that under the facts an accord and satisfaction was reached by and between Big A Supply, Inc., acting by and through its assignee for benefit of creditors and United States Gypsum Company, and such accord and satisfaction was based upon a valid consideration; that upon receipt by United States Gypsum Company of its pro rata share of the assets of Big A Supply, Inc., the debt of Big A owing to United States Gypsum was satisfied and fully discharged; and that under the terms of the Affidavit of Acceptance all persons privy to Big A Supply, Inc., were released and discharged from further liability on the account.

The appellant contends that the trial court erred in (1) concluding that the responsibility of the parties signatory to the

letter of guaranty was joint rather than joint and several; (2) holding that the release of one co-obligor operates to release all obligors; and (3) determining that an accord and satisfaction was reached between the debtor corporation and appellant which was supported by a valid consideration resulting in the satisfaction of the indebtedness owing to the appellant and the appellee's release and discharge therefrom.

Although no Texas case has been cited specifically determining whether the interpretation of language such as that here employed gives rise to joint or joint and several liability, we note that in 13 Tex. Jur.2d 293, Contracts, § 124, it is stated:

"Whether the liability of several promisors, whose interests are separate, is joint or several depends, of course, on the intention of the parties. For instance, the fact that several parties are named as promisors, while several others are named as promisees, is ordinarily indicative of a joint undertaking. Although this prima facie indication will not be controlling if the instrument, when considered in its entirety, discloses a contrary intention, where the instrument provides that 'we or either of us' promise to pay, the liability of the parties will then be deemed to be joint and several."

From a consideration of the entire instrument we find nothing that indicates other than a joint obligation.

A case quite analogous on its facts to the case at bar is that of Stone—Ordean—Wells Co. v. Taylor, 139 Minn. 432, 166 N.W. 1069 (1918), in which it was held that where the contract of guaranty was intended to be continuing in its operation and the obligee or creditor released one of two guarantors prior to extending credit to the debtor, the other guarantor is also released. In this connection, the court said:

"If the rule were otherwise, a surety might be subjected to risks never contemplated, for if a number should sign a guaranty and all but one should secretly withdraw, and no notice were necessary, the remaining surety might be held for the entire obligation."

That case involved a guaranty executed by two parties each of whom was a director of the debtor corporation. The appellant insists that the present case is distinguishable in that in the instant case one of the guarantors (Caldwell) had sold his stock in the debtor corporation before revoking his guaranty, and that under such circumstances his co-guarantors should have been sufficiently intimate with the affairs of the corporation to have knowledge of his termination of the relationship with the corporation and that it would be logical to expect him to disassociate himself from responsibility for corporate indebtedness. We find no evidence, however, that the other stockholder owners of the debtor corporation were in fact aware or had notice of the release of the liability of Caldwell by the creditor corporation until after the debt giving rise to this suit had been incurred. Further in the Stone case we find that:

". . . Myers [a co-guarantor] prepared the letter of credit at plaintiff's place of business, where it was executed by the sureties and accepted by the plaintiff [creditor corporation]. Subsequently Myers disposed of his interest in the Aurora Company [debtor corporation], and on February 8, 1908, served upon plaintiff [creditor corporation] a notice withdrawing from the guaranty. Plaintiff thereafter continued to furnish goods to the Aurora Company without informing the defendant [co-guarantor] of the notice served upon it by Myers until September, 1911. Under such a showing it cannot be said that either of the parties to the instrument intended that the other might revoke the guaranty as to himself, without notice to his co-surety, and thereby leave his associate liable for the full amount of the obligation."

The court further stated:

"A surety has a right to stand on the precise terms of his contract. He can be held to no other or different one. In the case at bar both contracted together and with reference to the same responsibility. Each had recourse to the other for contribution in case of loss. The release of one affected the contract as to the other."

We do not find that the facts in the Stone case are distinguishable from the instant case in any significant respect. We note further that in the case of Poole v. Bradham, 143 S.C. 156, 141 S.E. 267 (1927), the Supreme Court of South Carolina held that the release of one guarantor on a bond and mortgage operates to discharge others in a like relationship to the debt unless it is shown that the parties intended otherwise.

■■ Thus, under the holdings in the above cases, it appears that the language of the instrument containing the guaranty, considered in the light of all the circumstances surrounding its execution and the general purposes to be served by the instrument are basic in determining whether the obligation of the guaranty is joint or joint and several. From a consideration of the language of the guaranty instrument, together with the surrounding circumstances, it is our opinion that the obligation here is joint and that a release of one co-guarantor operates to release the other co-guarantors.

■■ In support of its position, the appellant cites the Negotiable Instruments Law, Art. 5932, Vernon's Ann.Civ.St. § 17, which had not been repealed at the time here involved. Section 17 deals with the construction to be applied in cases of ambiguous instruments. Section 17(7) of the Negotiable Instruments Law provides that "Where an instrument containing the words 'I promise to pay' is signed by two or more persons, they are deemed to be jointly and severally liable thereon." The instrument here involved is not ambiguous,

and such suggested construction would be inapplicable. Appellant also cites the Uniform Commercial Code subsequently adopted as Section 3.118 of the Business and Commerce Code, V.T.C.A. which states that when two or more persons sign an "instrument" the liability is joint and several unless a contrary intention is expressed. Article 5948, V.A.C.S., then in effect, defined the term "instrument" as being a negotiable instrument, and Section 3.102 of the Business and Commerce Code applies the same meaning to the term. It is clear that the instrument here involved is not a negotiable instrument. Also, appellant refers to Section 115 of the Restatement of Contracts which states that "Where a promise in a written contract is expressed in the first person singular, but the contract is signed by several persons, they are jointly and severally bound in the absence of express words in the instrument to the contrary." This section as it has been followed in Texas dealt with Section 17(7) of the Negotiable Instruments Law (Art. 5932, V.A.C.S.). See Miller v. Bush, 119 Tex. 53, 24 S.W.2d 23 (1930). Thus, under the foregoing construction and application of the section, and since the fact that the instrument here is neither ambiguous nor a negotiable instrument, we do not deem the foregoing section 115 persuasive or authoritative with respect to the question to be determined here.

■ Further, appellant contends that a pro rata reduction of the obligation should be applied by virtue of the release. Since the appellant had released and discharged Caldwell from the guaranty at a time before the indebtedness had been incurred by the debtor corporation and took no steps to advise the other co-guarantors of such release and discharge at a time when they could have reconsidered and re-negotiated their future contractual relationships in the light of the withdrawal of Caldwell, we do not agree that a pro rata arrangement is justifiable as a legal or equitable disposition of the matter. There is no proration provision in the agreement which, as pre-

viously stated, appears to indicate that the obligation is joint and not joint and several. Under these circumstances, it is our opinion that the release should be applicable to the entire guaranty. We overrule appellant's points of error nos. 1 and 2.

 In its third point, the appellant insists that the court erred in determining that an accord and satisfaction was reached between the debtor corporation and the appellant which was supported by a valid consideration resulting in the satisfaction of the indebtedness owing to appellant and thereby discharging the appellee from any further obligation upon the letter of guaranty. The appellant contends that since it did not receive an amount equal to as much as one-third of its claim as its pro rata share of the proceeds of the assignment for the benefit of creditors, there can be no discharge under art. 23.10 of the Business and Commerce Code. This discharge results from the operation of law and is an automatic discharge in the event a creditor receives one-third. However, if the release is based upon a valid consideration, the statute does not preclude the execution of a valid release upon a lesser payment. The agreed statement of facts shows that Big A Supply, Inc., was insolvent at the time it executed its assignment for the benefit of creditors, and this condition of insolvency was known by the creditor corporation at all pertinent times. In the light of this insolvency the appellant accepted the sum of $1,032.56 and released the debtor and all parties privy thereto from any further liability on the $6,073.89 account. Although the early common law rule is to the effect that payment of a sum less than the full amount of a debt could not constitute satisfaction of the whole, certain exceptions are recognized, one of the most important of which is known insolvency of the debtor. City of San Antonio et al. v. Guido Bros. Construction Co. et al., 460 S.W.2d 155 (Tex.Civ.App.— Beaumont 1970, writ ref'd n. r. e.). In the full knowledge of the insolvency of Big A Supply, Inc. at the time of the assignment for the benefit of creditors, the appellant accepted the lesser amount in full satisfaction of its debt and released the debtor and all parties privity thereto, including the appellee. This release was based upon a good and valid consideration which constituted an accord and satisfaction. See Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822 (1946). The appellant's point of error no. 3 is overruled.

For the reasons above stated, it is our opinion that, under the language of the instrument and in the light of the surrounding circumstances, the liability of the guarantors is joint rather than joint and several, and the release of one of the joint obligors operated as a release of other joint obligors; and further, that an accord and satisfaction, supported by a good and valuable consideration, had been reached with respect to the indebtedness, thereby effecting a release of the debtor corporation and the guarantors.

Accordingly, the judgment of the trial court is affirmed.