LOTTINGER, Judge.
The plaintiff, Capital Bank & Trust Company, Inc. (Capital), brought suit against defendants, Automotive Construction and Testing, Inc. (Automotive), Charlene M. Bishop, and Richard Fitzgerald to collect on two promissory notes held by the plaintiff. Defendants Bishop and Fitzgerald were sued for their signing of a “Continuing Guaranty,” whose terms bound them to pay any debts owed by Automotive to Capital. From a trial court judgment finding defendants liable in solido for the payment of the notes, only Charlene M. Bishop appeals.
FACTS
Defendant-appellant, Charlene Bishop, was the original incorporator, president, and sole stockholder of Automotive at its inception in 1978. She has remained the company’s president to the present.
In September of 1980, John Morrison bought 750 shares of Automotive’s stock, making him owner of 75% of the company. He did not then or ever become an officer of Automotive.
In early 1981 it was decided that a “line of credit” should be opened with Capital. According to Bishop, Morrison brought to her a printed form from Capital entitled “Resolution for Borrowing of Money, Signing of Notes and Security Devices, etc.” Bishop signed the form which she said contained no other signatures at that time. The form, as it reads now, bears the typewritten (in brown type) names of Bishop as president, Morrison as vice president, and Fitzgerald as secretary; it is signed at the bottom by those three in that order. The form resolution authorized the above-named persons to borrow from Capital, to sign notes and secure and sign various se *1192 curity devices required by Capital to secure the debt. The resolution is dated March 10, 1981.
Also dated March 10, 1981 is a “Continuing Guaranty” signed by Bishop, again brought to her by Morrison. The signee guarantees the payment of any indebtedness of Automotive to Capital whether existing then or arising later, up to $25,000.00. Automotive’s name and the amount of the guaranty are typed in with the same brown type referred to above. Bishop testified that the spaces for the debtor’s name and the amount guaranteed were blank when she signed it.
Two promissory notes, dated also March 10, 1981, evidence debts of $15,000.00 and $7,500.00 owed by Automotive to Capital; the first note is signed by Morrison and the second by Richard Fitzgerald, then secretary of Automotive.
Morrison has since died and his estate was not joined in this proceeding.
The notes then became due and this suit to collect on them resulted.
TRIAL COURT
The trial court found that the corporate resolution naming Morrison (along with Bishop and Fitzgerald) as authorized to borrow money and secure debts with Capital was valid. Automotive was thus found liable for payment of the notes signed by Morrison and Fitzgerald.
Bishop was held liable because of her guaranty of Automotive’s debts to Capital. The trial court discounted her protests of ignorance as to what amount Capital (through Morrison’s directions) had filled in on the agreement as the dollar limit she would guarantee. The court also failed to accord any weight to Bishop’s professed agreement with Morrison: that her signing of the continuing guaranty was only to establish “a line of credit” with Capital, and was not a prelude to getting loans from Capital.
ISSUES
The sole issue presented is whether the “Continuing Guaranty” signed by Bishop binds her to pay Automotive’s debt to Capital.
Defendant-appellant argues that since this contract of continuing guaranty is equivalent to a contract of suretyship, and such a contract requires mutual consent of the parties, then this guaranty is not binding because she never gave her consent. Bonura v. Christiana Bros. Poultry Co. of Gretna, Inc., 336 So.2d 881 (La.App. 4th Cir.1976); Siben v. Green, 8 So.2d 706 (La.App.Orl.Cir.1942).
She claims that Morrison was neither given nor was he possessed with the authority to fill in the amount recited on the guaranty form. She maintains that Morrison had led her to believe that the continuing guaranty was to be used only to establish “a line of credit” and that no loans by Automotive from Capital were contemplated. Since Morrison acted beyond the bounds of his authority, and she never agreed to a specified amount to be guaranteed, then she and Capital had never had the “meeting of the minds” necessary for the formation of a valid contract. La.Civ.Code art. 1779.
Capital counters that argument by pointing to repeated references made by Bishop during trial to her letting Morrison “take care of it,” having him “turn it into the bank,” and having “the bank fill it in properly.” They assert, agreeing with the trial court, that the overall impression created by Bishop is that she mistakenly relied on Morrison’s business judgment in securing and obtaining the loans from Capital. Her claimed ignorance of what the continuing guaranty meant was discounted by the trial court and by Capital. Unfortunately, Morrison was not alive to corroborate or refute Bishop’s assertions.
Her fellow officer and co-defendant, Fitzgerald, stated that when he signed his continuing guaranty he was told by Morrison that the amount to be guaranteed (to be filled in later) was between $20,000 and $30,000. Fitzgerald also stated that he understood what a continuing guaranty meant. It seems unlikely that Bishop, Automotive’s president, would be ignorant of *1193 the company s plans and of the meaning of the guaranty she signed.
Bishop stated that in June of 1981 (about the time the notes became due) she learned that Automotive had borrowed $22,500 from Capital. She said that she became upset but that Morrison told her he would “take care of it.”
The totality of the testimony and evidence leads to the conclusion that the trial court reached, i.e. Bishop signed the continuing guaranty with knowledge of its effect, and entrusted Morrison to complete the form and make the loan on behalf of Automotive. She did not expect to be eventually cast in judgment as liable for that loan, but that is the unfortunate result.
Her second argument, that La.R.S. 10:3-115 mandates a finding that the guaranty is unenforceable is without merit. This statute governs “instruments” only, defined in La.R.S. 10:3-102 as negotiable instruments (unless the context otherwise requires, which it does not). This continuing guaranty can in no way be called a negotiable instrument.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs. AFFIRMED.