**Richard E. BROOKS, Sr., Appellant,**

v.

**UNITED KENTUCKY BANK, Appellee.**

Court of Appeals of Kentucky.

July 15, 1983.

Discretionary Review Denied
Nov. 16, 1983.

Larry D. Raikes, R. Keith Bond, Raikes & Bond, Hodgenville, for appellant.

James E. Bondurant, Hodgenville, for appellee.

Before GUDGEL, HOWARD and PAXTON, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Larue Circuit Court in an action to enforce a guaranty agreement. The Court adjudged that appellant Richard E. Brooks, Sr. is liable on the agreement to appellee United Kentucky Bank in connection with a loan the bank made to a car dealership. Appellant contends that the court erred in finding that he is liable on the guaranty agreement and in failing to find that he was fraudulently induced to sign the agreement. We disagree with his contentions. Hence, we affirm.

In early 1978, appellant was in the process of purchasing the stock of Otis Smith Ford, Inc. from Otis Smith, its owner. The dealership was having financial difficulties, and Smith needed a thirty-day, $50,000 loan in order to purchase additional cars from the Ford Motor Company for resale. Frank Nichols, a senior vice-president of appellee, agreed to make the loan if it was guaranteed by appellant.

On August 21, 1978, Smith and appellant travelled to the appellee's office in Louisville, and Smith borrowed the needed $50,000. While the loan was being processed, Nichols took appellant into his office, and appellant signed the second page of a two-page printed form entitled "Unconditional Continuing Guarantee." The form stated as follows:

> The undersigned unconditionally guarantees to the Bank, its successors, endorsees, and assigns, the prompt payment when due of all present and future obligations, liabilities and instruments of any and all kinds constituting or evidencing obligations or liabilities, present or future, of Borrower to the Bank, whether of Borrower alone or in conjunction with others, whether incurred by the Borrower as Maker, endorser, drawer, acceptor, guarantor, accommodation party or otherwise, and whether due or to become due, secured or unsecured, absolute or contingent, joint or several, and howsoever or whenever acquired by the Bank, including any renewals and extensions. . . .

At the time appellant signed the form, spaces for the name of the borrower whose account was being guaranteed, the maximum amount to be guaranteed, and the date were left blank. The blanks were later filled in by Nichols' secretary. Nichols kept the completed form in his desk drawer for some time, but placed it in the car dealership's loan file before bank examiners conducted an audit.

Otis Smith renewed his note four times and received credit for certain payments

made on it. However, when the note came due again in December 1978, the dealership was in bankruptcy, and Smith defaulted in making any additional payments on the note. On January 6, 1982, the bank sued appellant on his guaranty agreement. After a bench trial, the court entered judgment in favor of the bank in the amount of $37,831.65. This appeal followed.

At trial, appellant argued that the guaranty agreement he signed was unenforceable because it was not completely filled out at the time he signed it. The court, however, relying on KRS 355.3–115(1), which provides that an instrument incomplete when signed but later completed in accordance with authority given is enforceable as completed, found that the agreement was enforceable. Appellant contends that the court erred in relying on Section 3–115(1) of the Code in finding that he is liable on the guaranty agreement. While we agree with this contention, we have concluded nonetheless that the court did not err in finding appellant liable on the agreement.

KRS 355.3–115(1) applies to any "incomplete instrument." As used in Article 3 of the Code, the term "instrument" means a negotiable instrument. KRS 355.-3–102(1)(e). In order to be a negotiable instrument, a writing must, among other things, contain an unconditional promise to pay a sum certain in money, be payable on demand or at a definite time, and be payable to order or to bearer. KRS 355.3–104(1)(b), (c), (d). The agreement signed by appellant does not specify a "sum certain," since it provides only that the guarantor's liability "shall not exceed" $50,000. Moreover, it is payable neither at a particular time or on demand, since it is a "continuing" guaranty. Further, it is made payable neither to order nor to bearer. Although our courts have not ruled on the question of whether guaranty agreements of the type signed by appellant are negotiable instruments, other jurisdictions which have considered the question have held that such agreements do not meet the Code's definition of a negotiable instrument. *Halpin v. Frankenberger,* 231 Kan. 344, 644 P.2d 452 (1982); *Branch Banking & Trust Co. v. Creasy,* 301 N.C. 44, 269 S.E.2d 117 (1980). We are persuaded by these decisions and accordingly hold that the guaranty agreement in the instant action is not within the purview of KRS 355.3–115(1).

It does not follow, however, that, because the court erred in relying on KRS 355.3–115(1), the judgment must be reversed. Appellant argues that, under the applicable common law, he cannot be held liable because the guaranty agreement was completed without his authorization after he had signed it. However, the rule relied on by appellant, as stated in 17 Am.Jur.2d *Contracts* § 73 at 411 and 412 (1964) and quoted with approval in *Citizens Fidelity Bank & Trust Co. v. Lamar,* Ky.App., 561 S.W.2d 326 (1977), is essentially the same as that set out in KRS 355.3–115: a contract incomplete when signed may be enforced as completed against the party signing it if its completion is as authorized by that party. Such is the situation in the case at bar. At trial, appellant testified that he signed the guaranty agreement without reading it and that Nichols told him that it was merely a promise to "look after" the bank's interests at the dealership. Nichols, on the other hand, testified that he told appellant that he would make the loan only if appellant guaranteed it, that appellant knew he was signing a guaranty agreement, and that the agreement was completed in accordance with the terms of the loan which appellant had agreed to guarantee. Thus, there was conflicting evidence as to whether the agreement was completed in a manner appellant had authorized. The court, as is its prerogative, chose to believe appellee's version of the transaction and found that the agreement was completed as appellant had authorized. Because there is evidence to support the court's finding, that finding may not be disturbed. Cr 52.01; *Ironton Fire Brick Co. v. Burchett,* Ky., 288 S.W.2d 47 (1956).

At oral argument, appellant also relied on *Citizens Fidelity Bank & Trust Co. v. Lamar, supra,* for the proposition that KRS 371.090 requires that he be relieved of

liability on the guaranty agreement. KRS 371.090 provides, in pertinent part, as follows: "No person shall be bound as the surety of another by the acts of an agent unless the authority of the agent is in writing, signed by the principal...." Appellant argues that this statute, as interpreted in *Citizens Fidelity,* required that Nichols have written, signed authorization from him to act as his agent in completing the guaranty agreement. Because Nichols had no such written authorization, he argues that the guaranty agreement cannot be enforced against him. We disagree.

KRS 371.090 permits an agent to enter into a binding guaranty agreement on behalf of a principal if the principal has given the agent written authority to do so. In *Citizens Fidelity,* the supposed guarantors signed blank guaranty agreements and gave them to an intermediary who, without either their knowledge or consent, entered into a contract of guaranty with the bank on their behalf. The bank then completed the blank agreements in accordance with this contract. The court held that the guarantors were not bound by the agreements because they had given the intermediary no written authority to bind them. Here, by contrast, appellant dealt directly with the bank, and, as discussed above, the evidence supports the court's finding that he personally agreed to guarantee the bank's loan to Otis Smith Ford and signed the "Unconditional Continuing Guarantee" as evidence of his agreement. In addition, it was conceded at oral argument that Nichols correctly filled in the blanks in the agreement. When he did so, Nichols was not entering an agreement on appellant's behalf as his agent, but merely completing the written evidence of the agreement appellant had already made. Thus, we hold that KRS 371.090 is not applicable to this case.

■ Appellant further contends that the guaranty agreement is unenforceable because it is not supported by consideration. We disagree. Before he signed the guaranty agreement, appellant had paid $50,000 towards the purchase of the stock in the car dealership and had co-signed a $125,000 note on its behalf. Thus, while appellant did not own the car dealership for whose benefit the loan he guaranteed was made, he had a substantial investment in it which the loan served to protect. In our view, this was sufficient consideration to support appellant's agreement to guarantee the loan.

■ Finally, appellant contends that the court erred in failing to find that he was fraudulently induced to sign the agreement. Appellant had the burden of proving the existence of fraud by clear and convincing evidence. *Wahba v. Don Corlett Motors, Inc.,* Ky.App., 573 S.W.2d 357 (1978). We cannot say that he met his burden. As evidence of fraud, appellant relies on his testimony that Nichols misrepresented the agreement's contents to him and Nichols' testimony that he retained the agreement in his desk drawer for some time. However, as previously noted, Nichols' testimony about the events surrounding the signing of the agreement contradicted appellant's. Also, Nichols explained that he had not immediately placed the signed agreement in the dealership loan file because appellant had asked that the existence of the agreement be kept secret from Otis Smith. Here again, the evidence was conflicting, and the court chose to believe appellee's version of the transaction. Because appellee's evidence supports the court's finding that there was no fraudulent inducement, we cannot say that the finding is clearly erroneous. CR 52.01; *Byerly Motors, Inc. v. Phillips Petroleum Co.,* Ky., 346 S.W.2d 762 (1961).

The judgment is affirmed.

All concur.