342 S.E.2d 264

**Harold C. GREGOIRE, Mildred Gregoire, Wayne N. Gregoire, and Sheila Gregoire**

v.

**The LOWNDES BANK, a State of West Virginia Banking Institution.**

**No. 16766.**

Supreme Court of Appeals of West Virginia.

April 4, 1986.

A.L. Emch, Thad S. Huffman, Jackson, Kelly, Holt & O'Farrell, Thomas W. Kupec,

Michael & Kupec, Clarksburg, for appellants.

Stephen G. Jory, Harry A. Smith, III, Elkins, for appellee.

PER CURIAM:

The Lowndes Bank, appellant, appeals from a final order of the Circuit Court of Randolph County which permanently enjoined it from foreclosing upon real estate owned by Harold G. Gregoire, Mildred Gregoire, Wayne N. Gregoire, and Sheila Gregoire, appellees, and which discharged the appellees as guarantors of two promissory notes executed in favor of the appellant. The appellant contends that the trial court erred in its application of West Virginia Code §§ 46–3–415, –416, and –606(1) (1966) to the transactions in question because the guaranty agreements executed were not negotiable instruments. We agree with this contention and reverse the final order of the trial court.

In 1975, Gregoire Coals, Inc., was formed by Harold C. Gregoire, Wayne N. Gregoire, and Roger J. Morgan, for the purpose of coal leasing, mining, and processing. On June 16, 1976, Gregoire Coals obtained a loan at The Lowndes Bank through execution of a $780,000.00 promissory note. This note was unconditionally guaranteed through execution of a separate guaranty agreement by the appellees and Roger and Margaret Morgan. On November 13, 1979, Gregoire Coals obtained a second loan at The Lowndes Bank through execution of a $350,000.00 promissory note. This note was also unconditionally guaranteed through execution of a separate guaranty agreement by the appellees and Roger and Margaret Morgan, and through execution of a second deed of trust on the homes of the appellees and Roger and Margaret Morgan.

In spite of this influx of capital, Gregoire Coals experienced substantial financial difficulty and became seriously delinquent on both loans within a short period of time. On June 10, 1980, all of the stock of Gregoire Coals was sold to the Kamora Company, N.V., Netherlands Antilles Corporation, in hopes of revitalizing the company. An anticipated influx of additional capital, however, never materialized, and Gregoire Coals' loan payments became further in arrears. After an unsuccessful search for a buyer, the appellant determined that its only viable alternative was foreclosure and notice of foreclosure on the second deed of trust was filed on July 20, 1982.

On August 4, 1982, the appellees filed a complaint in the Circuit Court of Randolph County seeking temporary and permanent injunctive relief to prevent foreclosure and secure discharge of their obligations on the second promissory note. At the conclusion of a hearing on August 13, 1982, a temporary injunction was issued until the case could be heard fully on the merits. The appellees filed an amended complaint on August 18, 1982, and the appellant counterclaimed for judgment on the first $780,-000.00 promissory note. Following hearings on March 18, May 13, and June 24, 1983, the trial court entered a final order on October 9, 1984, making the following conclusions of law:

1. The Plaintiffs are accommodation guarantors as to both the $350,000.00 promissory note executed on November 13, 1979, by Gregoire Coals, Inc., and as to the $780,000.00 promissory note executed on June 16, 1976, by Gregoire Coals, Inc. §§ 46–3–415, 46–3–416, *West Virginia Code;* and

2. The Defendant's actions, as outlined above, have resulted in the discharge of the Plaintiffs, as accommodation guarantors, pursuit to §§ 46–3–606(1)(a) and (b), *West Virginia Code.*

Therefore, the trial court permanently enjoined the appellant from foreclosing upon the appellees' real estate pursuant to the deed of trust executed on November 13, 1979, and discharged the appellees as unconditional guarantors on both the $350,-000.00 and $780,000.00 promissory notes.

West Virginia Code § 46–3–102(1)(e) (1966) provides that, "In this article unless the context otherwise requires 'Instrument' means a negotiable instrument." Under West Virginia Code § 46–3–415(1) (1966), "An accommodation party is one who signs the *instrument* in any capacity for the

purpose of lending his name to another party to it." (Emphasis added). Under West Virginia Code § 46–3–606(1) (1966), "The holder discharges any party to the *instrument* to the extent that with such party's consent the holder. . . ." (Emphasis added). Obviously, if the guaranties signed by the appellees are not "instruments," i.e., "negotiable instruments," the provisions of the Uniform Commercial Code do not apply.

The Uniform Commercial Code definition of "negotiable instrument" is set forth in West Virginia Code § 46–3–104(1) (1966), which provides that:

> Any writing to be a negotiable instrument within this article must
>
> (a) be signed by the maker or drawer; and
>
> (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and
>
> (c) be payable on demand or at a definite time; and
>
> (d) be payable to order or bearer.

Under this definition, a majority of jurisdictions have held that guaranty agreements are not negotiable instruments under the Uniform Commercial Code. *See United States v. Meadors*, 753 F.2d 590, 599 (7th Cir.1985); *European American Bank & Trust Co. v. Starcrete International Ind., Inc.*, 613 F.2d 564, 567 (5th Cir.1980); *EAC Credit Corp. v. King*, 507 F.2d 1232, 1238 (5th Cir.1975); *Associates Discount Corp. v. Elgin Organ Center, Inc.*, 375 F.2d 97, 99 (7th Cir.1967); *Federal Deposit Ins. Corp. v. Galloway*, 613 F.Supp. 1392, 1400–01 (D.Kan.1985); *United States v. Kurtz*, 525 F.Supp. 734, 743 (E.D.Pa.1981) *aff'd* 688 F.2d 827 (3d Cir.1982); *Union Planters National Bank v. Markowitz*, 468 F.Supp. 529, 535 (W.D.Tenn.1979); *Cobb Bank & Trust Co. v. American Mfrs. Mut. Ins. Co.*, 459 F.Supp. 328, 333 (N.D.Ga.1978) *aff'd* 624 F.2d 722 (5th Cir.1980); *Consolidated Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 456, 682 P.2d 457, 461 (Ariz. Ct.App.1984); *Fewox v. Tallahassee Bank & Trust Co.*, 249 So.2d 55, 57 (Fla.Dist.Ct.

App.1971); *Liberty Bank v. Shimokawa*, 2 Hawaii App. 280, 282, 632 P.2d 289, 291–92 (1981), *Ishak v. Elgin National Bank*, 48 Ill.App.3d 614, 617, 6 Ill.Dec. 630, 631, 363 N.E.2d 159, 161 (1977); *Halpin v. Frankenberger*, 231 Kan. 344, 349, 644 P.2d 452, 456 (1982); Syl. pt. 9, *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan.App.2d 246, 640 P.2d 343 (1982); *Kane v. Citizens Fidelity Bank & Trust Co.*, 668 S.W.2d 564, 565 (Ky.Ct.App.1984); *Brooks v. United Kentucky Bank*, 659 S.W.2d 213, 215 (Ky.Ct.App.1983); *Capital Bank & Trust Co. v. Automotive Construction & Testing, Inc.*, 434 So.2d 1191, 1193 (La.Ct.App. 1983); *National Bank of Detroit v. Alford*, 65 Mich.App. 634, 637, 237 N.W.2d 592, 593 (1975); *Aetna Cas. & Sur. Co. v. Nielsen*, 217 Neb. 297, 300–01, 348 N.W.2d 851, 854 (1984) *overruled on other grounds*, Syl. pt. 6, *First National Bank in Mitchell v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985); *First National Bank of Albuquerque v. Energy Equities, Inc.*, 91 N.M. 11, 16–17, 569 P.2d 421, 426–27 (1977); *Chemical Bank v. Pic Motors Corp.*, 87 A.D.2d 447, 451, 452 N.Y.S.2d 41, 44 (1982); *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 51–52, 269 S.E.2d 117, 122 (1980); *Gillispie v. DeWitt*, 53 N.C.App. 252, 257–58, 280 S.E.2d 736, 740– 41 (1981); *Shepherd Mall State Bank v. Johnson*, 603 P.2d 1115, 1117 (Okla.1979); *Cortez v. National Bank of Commerce*, 578 S.W.2d 476, 478 (Tex.Civ.App.1979); *United States Gypsum Co. v. Sampson*, 496 S.W.2d 687, 691 (Tex.Civ.App.1973); *Crown Life Ins. Co. v. LaBonte*, 111 Wis.2d 26, 39–40, 330 N.W.2d 201, 207–08 (1983); *but see Commerce Bank of St. Louis v. Wright*, 645 S.W.2d 17, 21 (Mo.Ct. App.1982) ("The defendant guarantors were parties to the instrument even though their guaranty was a separate document, or dehors the note itself, since they were known participants in the loan/stock-purchase transaction of which the note and guaranty were contemporaneous, integrated events."); *Provident Bank v. Gast*, 57 Ohio St.2d 102, 106, 386 N.E.2d 1357, 1359 (1979) ("Although the 'right of recourse' arose by way of a separate guaranty, it is nevertheless a right 'dehors' the instru-

ment and, therefore, encompassed by the statute.").

First, with respect to the requirement that a writing "contain an unconditional promise or order to pay" in order to be a negotiable instrument, the court in *Federal Deposit Ins. Corp. v. Galloway*, 613 F.Supp. at 1400–01, stated that:

> [T]he basis for holding that a guaranty agreement is not a negotiable instrument is rather obvious. To be "negotiable," an instrument "must contain an *unconditional promise* or order to pay a sum certain in money...." K.S.A. 84–3–104(1)(b) (emphasis added).... [A] guaranty is by its very nature a *conditional promise* to pay. That is, a guarantor promises to pay only on the condition that the principal debtor fails to pay. A creditor may not refuse a tender of payment by the principal debtor and then force the guarantor to make good on his guaranty. 38 C.J.S. *Guaranty* § 77(c) (1943). It is in that sense that these guaranty agreements are conditional.

Second, with respect to the requirement that the unconditional promise or order to pay be for "a sum certain," the court in *Branch Banking & Trust Co. v. Creasy*, 301 N.C. at 51, 269 S.E.2d at 122, stated that:

> For the requirement of a sum certain to be met, it is necessary that at the time of payment the holder is able to determine the amount which is then payable from the instrument itself, with any necessary computation, without any reference to an outside source. Official Comment, G.S. § 25–3–106 (1965); *Wattles v. Agelastos*, 27 Mich.App. 624, 183 N.W.2d 906 (1970). It is necessary for a negotiable instrument to bear a definite sum so that subsequent holders may take and transfer the instrument without having to plumb the intricacies of the instrument's background. *Cobb Bank & Trust Co. v. American Mfr's. Mut. Inc. Co.*, 459 F.Supp. 328 (N.D.Ga.1978).
>
> The document in question [a guaranty agreement] ... does not specify the amount of the liability that is to be paid. That data may be obtained only after resorting to sources of information which

ar external to the agreement itself. Such an absence is enough by itself to foreclose any finding that the paper at issue is negotiable.

Third, with respect to the requirement that the writing "be payable on demand or at a definite time" in order to be a "negotiable instrument," the court in *Brooks v. United Kentucky Bank*, 659 S.W.2d at 215, stated that, "In order to be a negotiable instrument, a writing must ... be payable on demand or at a definite time.... The agreement signed by appellant ... is payable neither at a particular time or on demand, since it is a 'continuing' guaranty." Finally, with respect to the requirement that the writing "be payable to order or to bearer," the court in *Consolidated Roofing & Supply Co. v. Grimm*, 140 Ariz. at 456, 682 P.2d at 461, stated that, "The guaranty signed by the Grimms was not payable to order or to bearer.... It was therefore not within the definition of a negotiable instrument. It was a continuing guaranty which is not a transaction covered by this provision of the code."

█ We are persuaded by the reasoning of the majority of jurisdictions which have addressed this issue, and hold that guaranty agreements are not negotiable instruments under West Virginia Code § 46–3–104(1) (1966). Accordingly, the trial court erred in its application of West Virginia Code §§ 46–3–415, –416, and –606(1) (1966) to the transactions in question because the guaranty agreements executed are not negotiable instruments.

█ Anticipating our conclusion that the guaranty agreements in this action are not negotiable instruments under the Uniform Commercial Code, the appellees maintain on appeal that even under common law, the actions of the appellant justify their discharge as guarantors. In Syllabus Point 3 of *Esso Standard Oil Co. v. Kelly*, 145 W.Va. 43, 112 S.E.2d 461 (1960), this Court held that, "An absolute guaranty is an unconditional promise of payment or performance of the contract on default of the principal debtor or obligor." Although the guaranties executed in the present ac-

tion were absolute, unconditional promises of payment on the default of Gregoire Coals, it has been noted that, "A guarantor may be discharged or released by a breach of the contract of guaranty, or, at least to the extent of the injury, by any act or omission of the guarantee, in breach of his duty, that increases the guarantor's risk or otherwise injuries his rights." 38 C.J.S. § 67 (1943).

Although the appellees allege no breach of the contracts of guaranty on the part of the appellant, they do complain concerning the appellant's extension of time for payment by the principal debtor and release of security in the form of the loss of certain coal leases and the transfer of personnel and equipment to Kamora. With respect to extensions of time for payment, it has been noted that, "An extension of time for payment or performance of the principal obligation, in order to release the guarantor, must be for a definite period of time and be provided for in a valid and binding agreement, distinct from the principal contract and founded on a good consideration." 38 C.J.S. *Guaranty* § 75(b) (1943). The appellees concede that no valid binding agreement was entered into in this case which specified any extension of time for payment by Gregoire Coals for a definite period. With respect to the release of collateral, it has been noted that, "The general rule is that the surrender or release of any security held by a guarantee against the indebtedness guaranteed, or any impairment, misapplication, or improper dealing therewith by him, discharges the guarantor to the extent to which he is injured thereby; but the rule is subject to exceptions, as where the guarantor consents to the surrender or release." 38 C.J.S. *Guaranty* § 81 (1943). A careful review of the record in this case reveals that the appellant's activities with respect to the collateral involved were either consented to by the appellees or resulted in no injury. In reality, the appellees complain that the appellant gave bad advice regarding the operation of their business. Bad advice by a guarantee, however, does not alone justify discharge of a guarantor.

For the foregoing reasons, the final order of the trial court in this proceeding is reversed and the case remanded for dissolution of the permanent injunction.

Reversed and remanded.