**GUARANTOR PARTNERS, a Tennessee general partnership, Plaintiff/Appellee,**

v.

**Billy C. HUFF, Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 22, 1992.

Permission to Appeal Denied by
Supreme Court May 4, 1992.

**74**

E. Clifton Knowles, Bennett L. Ross, Bass, Berry & Sims, Nashville, for plaintiff/appellee.

Gary D. Copas, Lebanon, for defendant/appellant.

## OPINION

KOCH, Judge.

This appeal involves a limited partner's continuing guaranty of a partnership debt. The limited partner declined to honor his guaranty when the partnership defaulted on the note, and the remaining guarantors formed a new partnership, acquired the note and the guaranties from the lender, and then filed suit against the limited partner in the Chancery Court for Davidson County. After the new partnership moved for summary judgment, the limited partner sought to amend his answer and to file a third-party complaint based on fraudulent inducement. The trial court granted the summary judgment and denied the motion to amend. The limited partner has appealed. We have determined that the guaranty is not a negotiable instrument and, therefore, that the new partnership is not entitled to a judgment as a matter of law. Accordingly, we vacate the summary judgment and remand the case for further proceedings.

I.

In August, 1985, Billy C. Huff's accountant, Gale M. Wilson, suggested that he needed a tax shelter. Mr. Wilson also recommended a limited partnership named Willow Creek Group, Ltd. ("Willow Creek"). Willow Creek had been formed by Jere M. Ervin and two partnerships controlled by Mr. Wilson for the purpose of acquiring and operating a 132–unit apartment complex in Little Rock, Arkansas.

On Mr. Wilson's recommendation, Mr. Huff became a limited partner in Willow Creek in November, 1985. Mr. Ervin, the Antioch Investment Company and the Dempsey–Wilson Group [1] were the general partners, and the other limited partners included Melinda O. Bass, Thomas D. Ferrell, and Michael W. Skelton.

Willow Creek purchased the apartment complex for $3,600,000, financing the sale with a $2,700,000 mortgage and a $887,617 promissory note. On November 21, 1985, Willow Creek borrowed $1,050,000 from Security Federal Savings and Loan Association ("Security Federal"). The note was without recourse against the maker, Willow Creek; therefore, Security Federal demanded and received continuing guaranties from Messrs. Ervin and Wilson, the four limited partners including Mr. Huff, and three other individuals.

Mr. Huff executed his guaranty agreement before the execution of the Willow Creek note. The guaranty was on a form separate from the note. It referred to the note but was not physically attached or incorporated into the note. While the guaranty limited Mr. Huff's exposure to $262,500, it was not restricted to the $1,050,000 note. By its own terms, it applied to all of Willow Creek's "existing and future obligations" to Security Federal. It also provided that Mr. Huff's guaranty was an "independent obligation" and that it should not be construed "as making [Mr. Huff] a 'party' to notes or evidences of indebtedness not in fact signed by [him]."

1. Mr. Wilson is a partner in the Nashville accounting firm of Dempsey–Wilson & Company.

He is also a partner in the Dempsey–Wilson Group and the Antioch Investment Company.

Willow Creek defaulted on the note when it matured in November, 1988. Security Federal called upon the various guarantors, including Mr. Huff, to honor their guaranties, but Mr. Huff refused to pay, claiming that he had been fraudulently induced to sign the guaranty.

Faced with Mr. Huff's refusal to honor his guaranty, the remaining general and limited Willow Creek partners formed a new partnership named Guarantor Partners. In May, 1989, Guarantor Partners purchased the promissory note and the related guaranties from Security Federal for $923,014. Security Federal actually endorsed the note and delivered it, along with the guaranties, to Guarantor Partners.

Guarantor Partners then demanded that Mr. Huff honor his guaranty and, when he refused, filed suit against him in the Chancery Court for Davidson County in July, 1989. Later, in October, 1989, Security Federal executed an assignment of all its rights under the continuing guaranties to Guarantor Partners.

Mr. Huff's initial defense was that Willow Creek was not a properly formed limited partnership. After Guarantor Partners moved for a summary judgment, Mr. Huff attempted to amend his answer and to file a third-party complaint based on fraudulent inducement. The trial court found that the fraudulent inducement defense could not be asserted against Guarantor Partners, reasoning that Mr. Huff's guaranty was a negotiable instrument and that Security Federal was a holder in due course under Tenn.Code Ann. § 47–3–302 (1979). Accordingly, the trial court denied Mr. Huff's motion to amend his complaint and granted a summary judgment on the guaranty to Guarantor Partners.

**2.** Dicta in a Tennessee Supreme Court opinion prepared by a special judge states that the extent of a guarantor's obligations under Tenn.Code Ann. § 47–3–416 (1979) should be based on the note and the separate guaranty. *Commerce Union Bank v. Burger-In-A-Pouch,* 657 S.W.2d 88, 92–93 (Tenn.1983).

**3.** By our count, eight federal courts and seventeen state courts have held that separate continuing guaranties are not negotiable instruments under the U.C.C. Only the courts in

## II.

The outcome of this appeal hinges on which body of law defines the parties' rights and obligations. The trial court, finding Mr. Huff's guaranty agreement to be a negotiable instrument, determined that Article 3 of the Uniform Commercial Code, Tenn.Code Ann. § 47–3–101, *et seq.,* was controlling. We have determined that the trial court erred as a matter of law and, therefore, that Guarantor Partners was not entitled to a summary judgment.

The courts of this state have never directly addressed the question of whether a separate continuing guaranty is a negotiable instrument.[2] However, of the courts that have addressed the question, a vast majority have held that a separate continuing guaranty is not a negotiable instrument for the purposes of the U.C.C.[3] *FDIC v. Nobles,* 901 F.2d 477, 480 (5th Cir.1990); *First City Bank v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1134 (10th Cir. 1987); *Ishak v. Elgin Nat'l Bank,* 48 Ill. App.3d 614, 6 Ill.Dec. 630, 632, 363 N.E.2d 159, 161 (1977); *Gregoire v. Lowndes Bank,* 176 W.Va. 296, 342 S.E.2d 264, 266–67 (1986); *Crown Life Ins. Co. v. LaBonte,* 111 Wis.2d 26, 330 N.W.2d 201, 208 (1983).

The theoretical basis for the majority rule is that a separate continuing guaranty is not an "instrument" as the U.C.C. defines the term. As with other states, Tenn. Code Ann. § 47–3–102(1)(e) provides that the term "means a negotiable instrument." Many types of documents calling for the payment of money are "negotiable." However, they are not "negotiable instruments" subject to the rules in Article 3 unless they contain all the elements required by Tenn. Code Ann. § 47–3–104(1).[4]

Missouri and Ohio have consistently held to the contrary. The earlier decisions of the Texas intermediate appellate courts have been called into question by later decisions of the Texas Supreme Court.

**4.** At the beginning of their discussion of negotiable instruments, Professors White and Summers point out that

One must first understand that a negotiable instrument is a peculiar animal and that many animals calling for the payment of

In order to be a negotiable instrument, Tenn.Code Ann. § 47–3–104(1) requires that an instrument

    (a) be signed by the maker or drawer, and

    (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

    (c) be payable on demand or at a definite time; and

    (d) be payable to order or to bearer.

■ Guaranties, by their very nature, are conditional promises to pay because guarantors promise to pay only on the condition that the principal debtor fails to pay. *FDIC v. Percival*, 752 F.Supp. 313, 324 (D.Neb.1990); *FDIC v. Galloway*, 613 F.Supp. 1392, 1400–01 (D.Kan.1985), *rev'd on other grounds*, 856 F.2d 112 (10th Cir. 1988); *Gregoire v. Lowndes Bank*, 342 S.E.2d at 267. Likewise, guaranties, even ones containing a limitation on the guarantor's liability, do not involve a sum certain because the amount of the guarantor's liability cannot be determined solely from the instrument itself without reference to an outside source. *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E.2d 117, 122 (1980); *Goss v. Trinity Savs. & Loan Ass'n*, 813 P.2d 492, 497 (Okla.1991); *Dann v. Team Bank*, 788 S.W.2d 182, 186 (Tex. Ct.App.1990); *Gregoire v. Lowndes Bank*, 342 S.E.2d at 267. Finally, a guaranty is not payable at a definite time or on demand since it is payable only when the principal debtor defaults. Continuing guaranties may be payable on numerous occasions. *Brooks v. United Kentucky Bank*, 659 S.W.2d 213, 215 (Ky.Ct.App.1983); *Dann v. Team Bank*, 788 S.W.2d at 186; *Gregoire v. Lowndes Bank*, 342 S.E.2d at 267.

■ There is one exception to the general rule that a separate continuing guaranty is not a negotiable instrument. This is when the guaranty, although on a separate form, is so firmly affixed to a negotiable instrument that it becomes part of the instrument itself. *Shepherd Mall State Bank v. Johnson*, 603 P.2d 1115, 1118 (Okla.1979); *see also* Tenn.Code Ann. § 47–3–202(2). Mere descriptive references in a note to a separate guaranty do not have the same effect. *Uniwest Mortgage Co. v. Dadecor Condominiums, Inc.*, 877 F.2d 431, 434 (5th Cir.1989). However, under this exception, the guaranty itself is not a separate negotiable instrument. It becomes an undistinguishable part of the negotiable instrument to which it is attached. This exception does not apply to this case. Mr. Huff's guaranty was on a separate form and was not affixed or incorporated into Willow Creek's note.

■ We have found no cases considering whether a continuing guaranty is an "instrument" for the purposes of the shelter rule in Tenn.Code Ann. § 47–3–201(1).[5] However, since the shelter rule can only apply to transferees of "instruments"—that is "negotiable instruments"—the majority rule is equally applicable. Thus, we hold that a separate guaranty such as the one Mr. Huff signed is not a negotiable instrument but rather a separate contract between Mr. Huff and Security Federal. It is assignable, like any other contract, if its terms permit assignment. *See Smith v. Dickinson*, 25 Tenn. (6 Hum.) 261, 263 (1845); *FDIC v. Gamaliel Farm Supply, Inc.*, 726 S.W.2d 709, 712 (Ky.Ct.App.1987). However, the rights and liabilities of the parties are governed by the law of contract and guaranty, not by the Uniform Commercial Code.

■ Accordingly, we find that the trial court erred as a matter of law when it

---

money and others loosely called "commercial paper" are not negotiable instruments and are not subject to the rules of Article 3.

1 J. White & R. Summers, *Uniform Commercial Code* § 13–1, at 622 (3d ed. 1988).

**5.** Guarantor Partners discusses the shelter rule at some length in its brief even though it did not

rely on this theory in the trial court. There it insisted that it was a holder in due course. It is unlikely that Guarantor Partners qualifies as a holder in due course in light of the good faith and notice requirements in Tenn.Code Ann. § 47–3–302(1)(b), (c).

determined that Guarantor Partners was a "holder in due course under T.C.A. § 47–3–305(2)." We also find equally untenable Guarantor Partners' argument on appeal that it has the rights of a holder in due course by virtue of the shelter rule in Tenn. Code Ann. § 47–3–201(1). Since Guarantor Partners is not entitled to a judgment as a matter of law under either theory, it was not entitled to a summary judgment.

### III.

The trial court denied Mr. Huff's motion to amend his answer solely on the ground that Guarantor Partner was a holder in due course against whom a fraud in the inducement claim could not be made. Since the trial court was in error concerning Guarantor Partners' status, its denial of Mr. Huff's motion to amend should be re-examined.

 Tenn.R.Civ.P. 15.01 provides that "leave [to amend a pleading] should be freely given when justice so requires." This provision substantially lessens the trial court's discretion with regard to permitting the parties to amend their pleadings. *Branch v. Warren,* 527 S.W.2d 89, 91–92 (Tenn.1975). Thus, defendants should be freely permitted to amend their answers when a case has not been set for trial, when discovery had not been completed, and when the plaintiff will suffer no prejudice except insofar as the defense itself might prevail. *Garthright v. First Tennessee Bank,* 728 S.W.2d 7, 9 (Tenn.Ct.App. 1986).

The general partners of Willow Creek had a duty to deal in good faith with Mr. Huff when they induced him to execute his personal continuing guaranty to secure Willow Creek's indebtedness to Security Federal. Thus, fraud in the inducement may provide a viable claim or defense against Willow Creek or any of the general partners. While Mr. Ervin's and Mr. Wilson's conduct is attributable to Willow Creek, Tenn.Code Ann. §§ 61–1–108(a), –111 (1989); *Stout v. Kernell,* 7 Tenn.Civ. App. (Higgins) 519, 523 (1916), it is not necessarily imputable to Guarantor Part-

ners unless Guarantor Partners is the alter ego of or successor to Willow Creek.

The present record does not enable us to determine the exact nature of the relationship between Willow Creek and Guarantor Partners. Therefore, we hold that when the case is remanded, Mr. Huff should be given a reasonable opportunity to amend his answer to assert his defense of fraudulent inducement against Guarantor Partners or to implead Mr. Ervin and Mr. Wilson as third-party defendants or both.

### IV.

We reverse the summary judgment and remand the case for further proceedings. We also tax the costs of this appeal in equal proportions to Billy C. Huff and his surety and to Guarantor Partners for which execution, if necessary, may issue.

CANTRELL and FRANKS, JJ., concur.